EDGAR WILLIAMS et al., Executors, etc., Respondents, *v.* LORRAIN C. FREEMAN et al., Appellants.

At the time of the execution of the will of F. he had seven adult children living, the issue of a former marriage, and one infant daughter, the issue of a second marriage. By his will he devised to each of two of his adult children certain real estate, with this direction as to each: "That on a final division and settlement" of his estate, the property so devised "be taken into account as a part" of the share of the devisee in the testator's estate, "and for that purpose be valued at $10,000, but without interest or any charge for the use thereof." The will then declared that he had advanced to another adult child moneys equivalent to said devises, and directed that the same be charged to said child as an advance on "final settlement and division" on account of his share without interest. The

executors were directed to pay to each of the four other adult children $10,000 as an equivalent for the provision made for the three, " the same to be charged to them respectively, but without interest, on a final settlement    *    *    *    as an advance on account of their respective shares." The executors were directed to invest $25,000 for the benefit of his wife and infant daughter, on the death or remarriage of his widow the income to be payable to the daughter during life, and the principal, upon her death, to her issue. The testator then declared that no gifts he might thereafter make to his children should be charged to their account on final settlement, unless he should have uncanceled, on his decease, some written evidence thereof signed by them. The executors were directed to divide the residuary estate, " share and share alike," among his children, excepting one, and any children born to the testator after the date of his will; each of the children named who should survive the testator to " have the use and benefit of one of said equal shares for life," and at his or her decease the principal to go to his or her issue, if any; if not, to his or her next of kin, " according to law." After the execution of the will, and before the testator's death, another child was born, and all of said children were living at the time of his death. In an action to obtain a construction of the will, *held*, that the infant children were entitled to share equally with the adults in the whole estate; and that the said specific devises, bequests and advances should be charged to the beneficiaries respectively, and taken into account as part of his or her share on division of the residuary estate.

Also, *held*, that oral testimony, or writings of the testator not attested as a will showing a contrary intent, being in direct contradiction of the plain terms of the will, were incompetent as evidence and ineffectual to change those terms.

The declarations of a testator cannot be resorted to to contradict or explain the intentions expressed in his will.

By a codicil the testator reduced the valuation of one of the parcels of real estate so devised to $8,000, and directed the balance of $2,000 to be paid to the devisee to make her equal with the others. It gave the whole income of the $25,000 to his widow, and directed that upon her death or remarriage it should revert to the estate, and directed that upon the final division the two infant children, and any other children who might thereafter be born, should be included and share equally with those named in the residuary clause. *Held*, that the codicil did not change or affect the provision of the will as to the distributive shares on final division, or that giving to each child a life estate only in the remainder.

(Argued December 21, 1880; decided January 25, 1881.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an

order made July 1, 1879, affirming a judgment, entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts are set forth sufficiently in the opinion.

*Theodore F. Miller* for appellants. It was error to receive extrinsic evidence as to the sources from which the testator received his property in aid of construction, in view of the clear unambiguous provisions of the will. (1 Redfield on Wills, 500, 501 ; *Mann* v. *Mann*, 1 Johns. Ch. 231 ; *Van Nostrand* v. *Moore*, 52 N. Y. 18 ; *Earl of Hardwicke* v. *Douglas*, 7 Cl. & Fin. 815 ; *Weatherhead* v. *Baskerville*, 11 How. [U. S.] 357 ; *Reynolds* v. *Robinson*, 10 Weekly Dig. 520.)

*Lucien Birdseye* for respondents. The intention of the testator must govern if it can be ascertained, and if it is not in hostility to any express provision of law. (*Kane* v. *Gott*, 24 Wend. 640, 659 ; affirming 7 Paige, 521 ; *Savage* v. *Burnham*, 17 N. Y. 561, 577 ; *Chrystie* v. *Phyfe*, 19 id. 344, 348 ; *Oxley* v. *Lane*, 35 id. 340, 349–350.) Such intention is to be ascertained from the entire will taken together, and not from any separate clause. (1 R. S. 748*, § 2 ; *Cowenhoven* v. *Shuler*, 2 Paige, 122, 129–130 ; *Egerton* v. *Conklin*, 25 Wend. 224–238 ; *Brown* v. *Lyon*, 2 Seld. 420 ; *Arcularius* v. *Geisenheiner*, 3 Bradf. 64 ; *Burtis* v. *Doughty*, id. 287.) Upon the proof of a will evidence may be introduced to supply a deficiency ; to remove an obscurity ; to show and explain a mistake ; to give effect to expressions that are unmeaning or ambiguous ; or to construe those which are used with reference to the customs or usages of a trade or business, or where founded on the habits, knowledge, position or conduct of the party executing the writing. (*Price* v. *Page*, 4 Vesey, 679 ; *Parsons* v. *Parsons*, 1 id. 601 ; *Smith* v. *Coney*, 6 id. 42 ; *Ex parte Hornby*, 2 Bradf. 42 ; *Jones* v. *Newman*, 1 W. Blackst. 60 ; *Colpoys* v. *Colpoys*, Jacob [4 Eng. Ch.], 451 ; *Mechanics' Bank* v. *Bank of Columbia*, 5 Wheat. 326 ; *Mosely* v. *Martin*, 27 Ala. 216 ; *Potter* v. *Rowland*, 4 Seld.

448 ; *Curtis* v. *Hitchcock,* 10 Paige, 399 ; *Hunt* v. *Adams,* 6 Mass. 519.) The court may look to antecedent and surrounding facts and circumstances, to ascertain the meaning of a writing ; may take proof of the meaning of technical or other phrases, and of facts known to and acted upon by the party executing the paper. (*Blossom* v. *Griffin,* 3 Kern. 509 ; *Griffiths* v. *Hardenberg,* 41 N. Y. 464 ; *Almgren* v. *Dutilh,* 1 Seld. 28 ; *Collender* v. *Dinsmore,* 55 N. Y. 200 ; *Sergeant* v. *Adams,* 3 Gray, 72 ; *Woods* v. *Lain,* 4 id. 322 ; *Doe* v. *Burt,* 1 T. R. 701 ; *Seaman* v. *Hogenboom,* 21 Barb. 398 ; *Carey* v. *Thompson,* 1 Daly, 35 ; *Cole* v. *Wendall,* 8 Johns. 116 ; *Fish* v. *Hubbard,* 21 Wend. 651 ; *Smith* v. *Wilson,* 3 B. & Ad. 728 [23 E. C. L. 169] ; *Bradley* v. *The W. A. & G. Steam Packet Co.,* 13 Peters, 89 ; *Persch* v. *Dickson,* 1 Mason, 1 ; *Astor* v. *Union Ins. Co.,* 7 Cow. 202 ; *Collender* v. *Dinsmore,* 55 N. Y. 200 ; of " C. O. D." ; *Dana* v. *Fiedler,* 2 Kern. 40.)

RAPALLO, J. This action was brought by the executors of the will of Lorrain Freeman, deceased, for the purpose of obtaining a construction of certain provisions of the will, and a codicil thereto.

The question on this appeal, as stated in the complaint, is whether, under the provisions of the will and codicil, the two minor children of the testator, Laura R. Freeman and Ida M. Freeman, who are his issue by a second marriage, are entitled to share equally with the adult children, in the whole estate; or whether his adult children, who are the issue of a former marriage, are preferred to the extent of $10,000 each. The court, at Special and General Term, held that the adults were entitled to the preference claimed, and from that decision this appeal is taken.

The testator died September 22, 1875, leaving him surviving his widow, Mary E. Freeman, and seven children, viz. : Lorrain C. and Edward M. Freeman, Sarah E. Raynor, Adelaide Williams, Deborah D. Willeber, Susan A. Dixon, Amy H. Kellogg, all adults, children by his first marriage, and the two above-named infants, children by his second marriage.

The provisions of his will upon which the question now at issue arises are as follows:

The will bears date July 9, 1873. By the second clause he devises to his son, Lorrain C., a house and lot in East Orange, New Jersey, in fee, and declares: "And it is my will that, on a final division and settlement of my estate, this property so devised to him be taken into account as a part of his share of my estate, and for that purpose be valued at $10,000, but without interest or any charge for the use thereof."

By the third clause he devises to his daughter, Amy H., his dwelling-house and land in Woodbridge, New Jersey, and declares that he does this in accordance with the wish of her mother, that the property may remain in the family. Then follows the declaration: "And it is my will that, on a final division and settlement of my estate, this property so devised to her be taken into account as a part of her share of my estate, and for that purpose be valued at $10,000, but without interest or any charge for the use thereof."

The testator then declares that he has already executed deeds to his said son and daughter for the two pieces of real estate above devised to them, and directs his executors to deliver the same, unless he does it while living.

By the fourth clause he declares as follows: "I have already advanced to and for my son Edward, in various ways, moneys equivalent to the above devises to Lorrain and Amy; and it is my will that the same be charged to him, on a final settlement and division of my estate, as an advance of $10,000 on account of his share thereof, but without interest."

By the fifth clause he directs his executors to invest $25,000 for the benefit of his wife Mary during her life or widowhood, and to pay her the interest, for the use of herself and their daughter Laura, who is one of the infant defendants. On the death or remarriage of the testator's widow, the income of this fund is to become payable to Laura during her life, and the principal to her issue after her death.

By the ninth clause the testator directs his executors to pay to his daughters, Sarah, Susan, Deborah and Adelaide, the

sum of $10,000 each, out of his estate " as an equivalent to the provisions made for Edward, Lorrain and Amy, the same to be charged to them respectively but without interest, on a final settlement of my estate, as an advance on account of their respective shares."

He then declares that it is his will that no gifts that he may thereafter make to his children, or any of them, shall be charged to their account on a final settlement unless he shall preserve some written evidence thereof with their signatures, and the same shall be found uncanceled at his decease.

After various other specific bequests, including a bequest of a fund in trust for a sister during her life, the eleventh clause disposes of his residuary estate as follows :

"Eleventh. All the rest, residue and remainder of my estate, real and personal, after paying and providing for the bequests and devises above mentioned (and the trust funds hereinbefore directed to be set apart and invested, when the parties for whose benefit they are thus set apart shall depart this life), I direct my executors to divide share and share alike among my daughters Sarah E., Deborah B., Adelaide and Amy H., and my sons Edward M. and Lorrain C. of my children now living, and any children that may be born to me after the date of this my will." Provision is then made for the case of the death of either of said children before the testator, and the clause proceeds : " And my will is that each of my children above named who shall survive me shall have the use and benefit of one of such equal shares for life and at his or her decease the principal thereof shall go to and be divided equally among his or her issue if any ; and if none, then among his or her next of kin according to law."

These are all the portions of the will which have any bearing upon the question at issue, and it is proper to consider them in the first place without reference to the memorandum put in evidence, or the codicil or the oral evidence admitted under objection.

At the date of the will Laura was the only child of the second marriage ; Ida M., the other infant, not having then been

born.    Laura and the testator's widow were by the will to take
no share of the residuary estate, but were separately provided
for by the $25,000 trust.    The residuary estate was to be di-
vided among the two sons and four of the daughters of the
testator living at the date of the will, and any children who
might be born to him after that date.    The shares of the resid-
uary estate were not to be paid over to the legatees, but to be
held in trust for them.

Ida M. having been born to the testator after the date of the
will, and all the children being alive at the testator's death, it
is evident that according to the terms of the will the residuary
estate was to be divided into seven parts, or shares.    The direc-
tion is that it be divided share and share alike, and if the de-
vises and bequests of $10,000 each to the adult children had
been absolute and unaccompanied with any direction as to their
effect upon the division of the residuary estate, the adult chil-
dren would undoubtedly have been entitled to retain these
amounts in addition to their shares of the residue.    But noth-
ing can be plainer than that the testator intended that these
devises and legacies should not be in addition to their shares of
his residuary estate, for he qualifies all these devises and be-
quests by declaring in the clearest and most explicit terms, as
to the money legacies bequeathed to the daughters, that they
shall be deemed an advance on account of their shares, and be
charged to them as such on a final settlement of his estate, and
as to the real estate given to Lorrain and Amy that in each
case on a final division and settlement of his estate, the property
devised shall be taken into account as a part of the share of
the devisee and for that purpose valued at $10,000, and as to
the son Edward that the advances already made to him shall
be charged to him as an advance of $10,000 on account of his
share of the estate on a final settlement and division thereof.
It is impossible, in the face of this explicit language, so to
construe the will as to hold that the devises and bequests of
$10,000 each are intended to be in addition to and not to form
part of the shares of the adult children on the division of the
residuary estate.    And any oral evidence introduced for the

purpose of showing such an intent was in direct contradiction of the plain terms of the will.

It is suggested that the directions in respect to charging the gifts of $10,000 each to the adult children were superfluous if the testator intended that all his children should share equally. This is quite an erroneous view. The testator desired to give to two of his children specific pieces of property as part of their shares; another child he desired to charge with money already advanced as part of his share. The other adults he desired to place on an equality by giving them in money, sums sufficient to equalize the shares, and the substance of the whole will is, that each of the adult children (except the son Edward) is to have $10,000 absolutely, and the rest of their shares of his estate is to be held in trust. For some reason, not explained, one of the daughters (Susan) is to have only the $10,000 legacy. The second wife and her child living at the date of the will are separately provided for, but in case any other child should be born, such child is to have a full share of the estate. In making this provision the testator did precisely what the law would have done had he made no mention of any after-born child (2 R. S. 65, § 49), except that if the after-born children had been left to the protection of the statute, they would have taken their shares absolutely instead of for life, and in order to effectuate the intention of the testator that all his children should stand on an equality in all respects it was indispensable to provide that the specific devises and bequests to the adult children should be charged to them as part of their shares on the final division. The will is clear and perspicuous in its terms, and it is only in the effort to change them that any obscurity or difficulty arises.

Thus far neither the memorandum, the codicil, nor the oral testimony have been considered.

The memorandum forms no part of the will, and is not attested in such manner as to form a testamentary declaration. It is merely a parol declaration of the testator, introduced for the purpose of aiding in the interpretation of his will, and comes under the head of extrinsic evidence.

If this evidence was introduced for the purpose of proving that the testator, when he said in his will that the legacies of $10,000 each were to be charged to the legatees respectively as part of their shares of his estate on a final division, did not mean that they were to be so charged, it was incompetent and inadmissible. The intent of a testator expressed in his will cannot be changed by his parol declarations *dehors* the will. If offered for the purpose of showing that the testator had received property through his wife, it was mere hearsay and not evidence of the fact. But assuming it to be legitimately in the case, it simply declares that the testator has divided among his children, either by means of advances made in his life-time or by the provisions of his will, all moneys derived from his first wife. The purpose of this declaration would seem to be to inform his adult children that they were to expect nothing by reason of their mother's property, except what they had already received or were to take under the will. But however construed, and even if it showed that the provisions of the will did not conform to the testator's intentions respecting the property derived through the first wife, or that such provisions were not such as met the approval of the court, the memorandum conferred upon the court no power to amend them. The declarations of a testator can never be resorted to for the purpose of contradicting, or even explaining, the intentions expressed in the will. The statute which requires these intentions to be expressed in writing, attested in a prescribed form, precludes any other proof of them except the writing, and such facts and circumstances as are necessary to its intelligent reading. If the testator had expressly declared in writing, not attested as a will, that he did not mean by his will that these legacies should be deemed part of the shares of his adult children, but that on account of their mother's property they should be in addition to such shares, evidence of such a declaration would have been clearly inadmissible.

The oral testimony which was admitted was to the effect that the testator received through his wife, property amounting to something less than $15,000, in the year 1852 or 1853, and

from this fact it is sought to engraft upon the testator's will a provision preferring his adult children to the amount of $70,000, by holding that the legacies of $10,000 each are to be in addition to their shares of the residuary estate, where the will plainly says and repeats several times that they are to form part of the shares, and be charged as such.

If the fact proved shows any thing, it is that the testator might, with propriety, have made some discrimination between the different sets of children; but it is no ground for putting an interpretation upon the will different from the language used. The language is sensible, intelligible, and, indeed, more than ordinarily clear. In such a case extrinsic proof cannot vary it.

We finally come to the codicil. This, so far from throwing any doubt upon the meaning of the provisions of the will, shows that the testator understood what he had said, and intended just what he had said, in his will.

In the first clause of the codicil he directs that the valuation of the house and land at Woodbridge, New Jersey, devised to his daughter Amy, be reduced from $10,000 to $8,000, and that the balance of $2,000 be paid to her to make her equal with the others. This clearly referred to the sum with which she was to be charged on the final division on account of the devise.

The third clause changes the disposition of the $25,000 given in trust for the testator's widow and child Laura. It gives the whole income of the $25,000 to the widow, and directs that on her death or remarriage the principal revert to his estate; and in the fourth clause he directs that on the final division of his estate his daughters Laura and Ida M. (who had been born since the date of the will), and any other children who might be born after the date of the codicil, be included, and share equally with his other children named in the eleventh clause of his will.

There is nothing in the codicil in any manner changing or affecting the provisions of the will, which direct that on such final division the legacies and devises to the adult children be

counted as part of their shares, and charged to them at the sums named, on the final division.

It seems to us too clear for controversy that the intention of the testator, as expressed in the will and codicil, was that all his children, except Susan, should share equally in his estate, and that on the final division the sums of $10,000, directed to be charged to each of the adult children, be deemed part of their respective shares; so that each adult shall, on such division, receive such a sum as would, with the addition of $10,000 without interest, be equal in amount to the share allotted to each infant.

We see no intention expressed in the codicil to change the provision that each child shall have a life estate only in his or her share received on the final division, with remainder over, as directed in the eleventh clause of the will. That direction extended to children who might be born after the date of the will, and the only change effected by the codicil is to include Laura (as well as Ida and any other after-born child) in the division, instead of providing for her out of the $25,000 trust. The intention apparently was that the tenure of all the children should be the same, except as to so much of the shares of the adult children as had already been advanced, or was given in the form of specific legacies.

So much of the order of the General Term as affirms the fourteenth clause of the judgment of Special Term, being the clause which adjudges that the adult children are entitled to be preferred to the infants, and that such infants are not entitled to share equally with the adults in the whole estate, should be reversed and judgment entered in conformity with this opinion; and so much of the order of the General Term as affirms the fifteenth clause of said Special Term judgment, being the clause which adjudges that the infants are only entitled to a life estate in their shares, should be affirmed.

Costs of all parties in this court should be paid out of the estate.

All concur.

Judgment accordingly.