Matter of the Final Judicial Settlement of the Estate of ANTHONY LYDEN, Deceased.

(Surrogate's Court, Sullivan County, September, 1909.)

Evidence — Parol evidence — The general rule and its applications — Admissibility of parol evidence to vary or contradict written instruments in general — General rule — Legibility.

Where there is no illegibility about the word " ten " in a legacy of " ten hundred dollars," parol evidence is inadmissible to change the word " ten " to " two;" although the executors who were present when the will was executed are prepared to testify positively that the scrivener was told to make the legacy two hundred dollars and claim that the word is illegibly written.

PROCEEDING upon the final judicial· settlement of the account of executors.

Surrogate's Court, Sullivan County, September, 1909. [Vol. 64.

George H. Smith, for executors.

Carpenter & Rosch, for Martin Lyden.

George L. Cooke, for Michael Lyden.

Roosa, S. On the 13th day of May, 1907, the will of Anthony Lyden, deceased, was duly admitted to probate by the surrogate of the county of Sullivan.

On the 4th day of January, 1909, a petition was filed in the Surrogate's Court by Martin Lyden, one of the beneficiaries under the will, praying that a citation issue directing the executors of said estate to appear and render a final account of their proceedings as such executors.

On the 8th day of January, 1909, the executors filed a petition for a final judicial settlement of their accounts and subsequently filed their account as such executors.

This contest arises upon the final settlement of said account and the executors ask for a construction by the surrogate of the amount of a certain legacy named in the will to the petitioner herein, Martin Lyden. The contention of the executors is that a certain word in the will of Anthony Lyden, deceased, is not legibly written and they are not able to determine from the will whether the legacy thereunder is $200 or $1,000.

The legatee claims the word is ten while the executors and the residuary legatee, Michael Lyden, insist that it is two.

The law is practically settled that the meaning of the will must be ascertained from the will itself and, when the language is not uncertain or doubtful, parol evidence is not permissible to contradict it. It is contended on the part of the executors that they were both present when the will was drawn and heard the deceased state to the scrivener to give Martin Lyden $200. This evidence was objected to on the ground that there is no uncertainty or ambiguity in the will and, therefore, parol evidence cannot be admitted to explain or contradict the wording of the will. The counsel for the executors and the residuary legatee do not claim there is any ambiguity in the will; on the contrary, in their brief they state " there is no ambiguity in the provision."

Chancellor Kent in Mann v. Mann, 1 Johns. Ch. 231, says: "The objection to supply the imperfection of a written will, by the testimony of witnesses is founded on the soundest principles of law and policy, and if collateral averments be admitted, * * * to use the words of Sir Matthew Hale, 'how can there be any certainty? A will may be anything, everything, nothing.'

"The statute appointed the will to be in writing, to make it a certainty; and shall we admit collateral averments and proofs, and make it uncertain?"

In 3 Peere Williams, 354, this language was used: "That if we admit parol proof, then the witnesses, and not the testator, would make the will." In the Mann case the court further says: "The only apology for parol proof, in any case, is the necessity of the thing, because the ambiguity is so complete as to elude all interpretation and would destroy the devise altogether unless explained."

It is a well settled rule which runs through all the books that parol evidence cannot be admitted to supply or contradict, enlarge or vary the words of a will, or to explain the intention of a testator, except in two cases: 1, Where there is a latent ambiguity, arising dehors the will as to a person or subject meant to be described; and, 2, To rebut a resulting trust. It is conceded by counsel that this case does not come within either exception.

Jarman on Wills (384) says: "It is clear that parol evidence of the actual intention of a testator is inadmissible for the purpose of controlling the construction of the written will, the language of which must be interpreted according to its proper acceptation, or with as near an approach to that acceptation as the context of the instrument will admit."

Robert's Treatise on Wills (267) says: "There is no rule which stands on a surer principle than this: that parol evidence is never to be admitted where there is no ambiguity to call for explanation and where the will may operate according to the words without any foreign help."

In Kerr v. Bryan, 32 Hun, 53, the court said: "Testimony was offered and excluded as to a conversation between the testator and his counsel who drew the will, to the effect

that his intention was to limit Mrs. Kerr's interest in the property to a life estate. This evidence was not admissible. The intention of the testator must be ascertained from the language of the will, and when such language has a plain meaning, and is neither uncertain, and ambiguous nor doubtful, parol evidence to contradict it, to explain it, is inadmissible."

In William v. Freeman, 83 N. Y. 569, the court said: " The declarations of a testator can never be resorted to for the purpose of contradicting, or even explaining, the intentions expressed in the will * * *." The intent of a testator expressed in his will cannot be changed by his parol declarations dehors the will.

The general rule is that declarations of a testator, before, contemporaneously with, or after, the making of a will, are inadmissible to affect construction. 1 Redf. Wills, 538.

The court in Matter of Keleman, 126 N. Y. 78, said: " It is a cardinal principle in the construction of the terms of a will that the intention of the testator must be gathered from the will itself, parol proof being only permissible to show the condition of the estate and the surroundings of the testator; and that conversations as to the intentions, or even written memoranda, cannot be resorted to for the purpose of sustaining a will which is apparently against the provisions of a statute, much less to destroy a will which upon its face is not in contravention of any statute."

In Brown v. Quintard, 177 N. Y. 83, the court said: " Extraneous and parol evidence is admissible to explain a will when there is a latent ambiguity, arising *dehors* the instrument, but never to supply, contradict, enlarge or vary the written words."

In the recent case of Tousey v. Hastings, 194 N. Y. 80, the court uses this language: "Aside from the danger of fabrication, verbal admissions are regarded as unreliable evidence, because experience shows that they are frequently misunderstood, imperfectly remembered and inadvertently made." How much is inference and how much recollection neither we nor the witnesses can tell. The opportunity for misunderstanding and misrecollecting what the decedent said

is quite apparent from the evidence, and as the highest Federal court once decided " courts of justice lend a very unwilling ear to statements of what dead men had said."   21 How. N. S. 493.

When the will of Anthony Lyden was admitted to probate and recorded in the Sullivan county surrogate's office, no objection was filed and no question raised as to the amount of any legacy contained in it; and the record shows that in the legacy to Martin Lyden it was recorded " ten hundred dollars."   On this hearing for a final settlement before the surrogate, the witnesses, without an exception, were asked to read the provision in reference to Martin Lyden, and they read it " ten " and not " two."   The witness McGrath, sworn for the executors, testified that had he not heard of the dispute he would call it " ten."

This testimony all goes to show that there is no illegibility about the word.   The scrivener was a poor writer as well as a poor speller; but, on all the testimony and a careful examination of the will, it is clear there is nothing to warrant the court in holding that parol proof should be admitted.

Admitting, for the sake of the argument, that the executors, who were present when the will was drawn, are prepared to testify positively that the scrivener was told to make the legacy to Martin Lyden two hundred dollars, it cannot be allowed, as parol evidence of this character, under the authorities in this State, cannot be admissible.

As has been said by a legal writer: " It will readily be admitted that to serve the particular purpose, or meet the supposed hardship of an individual case, we ought not to break in upon the established principles of the law.

The observation of Lord Talbot contains the true and wise doctrine on this subject, that " it is better to suffer a particular mischief than a general inconvenience."

I, therefore, feel bound, under all the evidence in the case and a careful examination of the will, to construe the will as awarding Martin Lyden the sum of ten hundred dollars.

Let a decree be accordingly prepared.

Decreed accordingly.