<hr>

(79 Misc. Rep. 567.)

### In re PERCIVAL'S ESTATE.

(Surrogate's Court, Oneida County. February, 1913.)

1. CONTRACTS (§ 74\*)—CONSIDERATION—BENEFIT TO THIRD PERSON.

   Where testator conveyed certain property to his daughter, taking back a mortgage for the entire purchase price, which mortgage was never recorded, but was retained and found among his effects after his death, and where the daughter's husband, pursuant to testator's agreement that he would satisfy the mortgage or deliver it to his daughter, transferred to the daughter, his wife, through the testator, certain corporate stock, the act of the husband in parting with the stock was a good con-

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sideration for the testator's promise, and hence the daughter, as executrix, was not chargeable with the mortgage.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 331–343; Dec. Dig. § 74.*]

2. WITNESSES (§ 140*)—TENANT BY CURTESY—HUSBAND AND WIFE.

The contingent interest of the husband of executrix in property as a tenant by curtesy would not disqualify him as a witness, under Code Civ. Proc. § 829, prescribing when a husband shall be incompetent to testify, on the judicial settlement of her account as executrix.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 598–618; Dec. Dig. § 140.*]

3. EXECUTORS AND ADMINISTRATORS (§ 506*) — ACCOUNTING — BURDEN OF PROOF.

Where an executrix on final accounting produces vouchers for sums paid out for which she seeks credit, and her account is sworn to, the burden is upon the contestants to show that such items were not just claims against the estate.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2169–2177; Dec. Dig. § 506.*]

4. EXECUTORS AND ADMINISTRATORS (§ 176*)—CHARGES AGAINST ESTATE—REASONABLE SUSTENANCE OF WIDOW.

Where a widow is in good health, except that she is worried on account of wrongdoing in respect to testator's estate, she is not entitled to a nurse as a part of her "reasonable sustenance," under Real Property Law (Consol. Laws 1909, c. 50) § 204, providing that the widow may have her reasonable sustenance out of her husband's estate for 40 days after his death.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 459½, 538; Dec. Dig. § 176.*]

5. WILLS (§ 770*)—ADEMPTION—EVIDENCE.

Evidence in proceedings upon the judicial settlement of the account of an executrix *held* to show that the testator, when he deeded a shirt factory to his grandchild, intended such transfer to be an ademption of the testamentary provisions to such grandchild set out in certain paragraphs of his will, but not of the residuary portions of his will or any part thereof.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1992; Dec. Dig. § 770.*]

6. WILLS (§ 765*)—"ADEMPTION"—WHAT CONSTITUTES.

Where a father, or one standing in loco parentis, gives a legacy to a child, it is understood as a portion, though not so described in the will; and if he afterwards makes an advancement to that child in the nature of a portion, such provision or portion will be held an ademption.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1979; Dec. Dig. § 765.*

For other definitions, see Words and Phrases, vol. 1, pp. 179–181.]

7. WILLS (§ 770*)—ADEMPTION—EVIDENCE.

Whether an advance made was intended as an ademption can only be determined from the circumstances surrounding each individual case, for which purpose parol evidence is admissible.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1992; Dec. Dig. § 770.*]

8. TRIAL (§ 91*)—RECEPTION OF EVIDENCE—MOTION TO STRIKE.

Where a party fails to object to the reception of improper evidence, he cannot thereafter have such evidence stricken out.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 242–244, 252; Dec. Dig. § 91.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

9. WILLS (§ 487*)—CONSTRUCTION—EVIDENCE—DECLARATIONS OF TESTATOR.
   The declarations of a testator are not admissible to contradict or explain the intentions expressed in the will.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1023, 1026–1032; Dec. Dig. § 487.*]

10. WILLS (§ 449*)—CONSTRUCTION—PRESUMPTION AGAINST INTESTACY.
   A will will not be so construed as to result in partial intestacy, if a different construction is permissible.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 965; Dec. Dig. § 449.*]

11. WILLS (§ 765*)—CONSTRUCTION—ADEMPTION.
   Where the evidence shows such to be the intention, a life use, where the amount of the same is ascertainable and definite, may be adeemed either in whole or in part by an advance made subsequent to the execution of the will, either in money or an equivalent, the value of which can be definitely ascertained.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 1979; Dec. Dig. § 765.*]

Accounting by Florence A. West, as executrix of William G. Percival, in which Louise A. Timian and others filed objections. Decreed according to opinion.

Davies, Johnson & Wilkinson, of Camden, for executrix.
Stoddard M. Stevens, of Rome, for contestants.

SEXTON, S. On September 30, 1909, William G. Percival died at Camden, N. Y., leaving a will in which he named Florence A. West as executrix, and which was probated on May 31, 1910. On December 18, 1911, said executrix filed her account, and on February 28, 1912, Louise A. Timian, Clayton A. Timian, and Grace Mann, legatees under said will, filed objections thereto, challenging many items of the account, of which only the following remain undecided: (1) The mortgage of $1,800 due from Florence A. West to the estate of William G. Percival, deceased. (2) The item of $1,024 erroneously and unlawfully paid by Florence A. West, as executrix of the estate of William G. Percival, deceased. (3) The bill of Ormetta Percival for services alleged to have been rendered by her as a nurse in attending Caroline S. Percival, deceased. (4) The bill of Davies, Johnson & Wilkinson for services alleged to have been rendered to Florence A. West, as executrix of the estate of William G. Percival, deceased. (5) The indebtedness of Isaac D. West to William G. Percival, deceased, amounting to $50 or $52, which did not appear either in the inventory or in the account filed by the executrix. (6) Ademption of legacies. These contested items will be considered in the order named.

[1] It seems that on April 4, 1893, the deceased deeded to his daughter, Florence A. West, a house and lot in Camden, N. Y., and took back from her a mortgage for the entire purchase price in the amount of $1,800, which was never recorded, but delivered to and found among the effects of the deceased. Some payments were made on this mortgage. The claim of said executor to said mortgage is based principally upon the evidence of her husband, Isaac D. West, from which it appears that in March, 1894, he bought stock from the deceased in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the Camden Water Wheel Works, a domestic business corporation, amounting to a third interest, and gave a note for $6,666.66, with 10 shares of said stock as collateral, amounting to $1,000. On May 6, 1905, the deceased and West met for a settlement, and a check was given by West to deceased for $2,500, which paid the balance of said note, except $50, for which a new note was given. At said meeting it was found that payments in the amount of $400 made by West had not been credited on said note, nor on said $1,800 mortgage. West said: "Did you indorse those on that mortgage?" He said: "No, I don't know as I have; but I will." West said: "That must reduce that mortgage to about $1,000. * * * You ought to give that to Florence." "Well," he said, "if you will give her $1,000 of that Water Wheel Stock, I will do it." And West said: "I will do it." He said: "All right." And I had it transferred to him. He said: "I have transferred it to her." The stock in question was then West's, and the deceased had been holding it as collateral to the note.

Exhibits H and I are two certificates of stock in Camden Water Wheel Works, five shares each, of $100 a share. On the date of the alleged agreement between West and the deceased, May 6, 1905, each of said shares, which had been issued to West April 10, 1894, was absolutely assigned by West to said deceased, W. G. Percival, in West's handwriting, and said assignment was witnessed by C. A. Timian, one of the contestants. On the same day, in the writing of attorney, George F. Morse, each of said certificates of stock was absolutely assigned to Florence A. West by said W. G. Percival, deceased.

Said mortgage was not produced or then turned over as agreed, but was found among the effects of the deceased with an indorsement of $10 made in the handwriting of deceased under date of April 9, 1908. West testified that he never asked for the mortgage and said he often wondered why he did not.

This mortgage was produced and listed with other assets of the estate without the knowledge of Mrs. West, but was not included in the inventory by Mrs. West, the executrix and claimant. Mrs. West knew about the said stock having been assigned to her by her father and since his death she had always claimed said mortgage.

As bearing upon the question as to whether her father and husband entered into the agreement for her benefit, testified to by her husband, we have the evidence of a disinterested witness, Vianna Whitford, who knew the deceased for 50 years. She gave a conversation with the deceased, held a short time before his death, in which he said:

"I don't want to live, if I can't get well. I have been arranging my business, and I have given the girls their homes, and I have given Clate the shirt factory."

February 19, 1907, the deceased deeded to his daughter, a contestant, Louise A. Timian, a house and lot on Main street in Camden. This deed confirms what deceased said to Mrs. Whitford as to one of his two daughters; but the expression, "I have given the girls their homes," has no force or meaning, except upon the assumption that he had cleared Florence's home in his agreement with her husband. There is no evidence, nor presumption against this view, because Flor-

ence was his favorite daughter. If West did not pay the deceased $2,500 by check May 6, 1905, the day the stock was assigned to Mrs. West, that fact could have been shown by the records of the bank on which the check was drawn. Seemingly deceased, to make sure that his favorite daughter should have West's stock held by him as collateral, required West to assign it to him, instead of trusting West to assign it direct to her. On the mortgage in question there is an indorsement of $10 in handwriting of deceased under date of April 8, 1908.

It is urged that said indorsement furnishes strong evidence that the deceased never agreed, as West testified, to give Florence the mortgage. At most said indorsement is a declaration of deceased in his own favor, and is hearsay, and, while received without objection, I do not consider it as at all controlling, for the reason that the deceased at the time of said indorsement had several interest-bearing securities, on any of which said $10 might have been paid, and in view of the fact that West positively denies having made said payment to deceased on account of any matter. It is my duty to find that the deceased made a mistake when he made the $10 record on the mortgage, Exhibit 3A, as he was a sickly old man, rather than to find perjury on the part of West, who is a respectable business man, and worthy of credence, so far as the record shows.

I hold that the agreement testified to by West was made between him and deceased. West kept his part of it by assigning his stock, so that title passed to Florence. The deceased never actually carried out his part of the agreement, by satisfying the mortgage or by delivering it to his daughter Florence. Can such an agreement be enforced? Was there any consideration therefor?

It could have been enforced against deceased in his lifetime, and can be against his estate, and there was sufficient consideration therefor. The relation of husband and wife has been twice recognized in this state as furnishing a sufficient consideration for supporting a covenant in the wife's favor of the character under consideration. Todd v. Weber, 95 N. Y. 187, 47 Am. Rep. 20; Buchanan v. Tilden, 158 N. Y. 109, 52 N. E. 724, 44 L. R. A. 170, 70 Am. St. Rep. 454. Independent of the marital relation, West's parting with title to his stock was a good consideration for the promise of the deceased to give the mortgage to his daughter. Crook v. Scott, 65 App. Div. 139, 72 N. Y. Supp. 516.

[2] It is urged that West is interested, being the husband of the beneficiary of the said agreement; hence incompetent as a witness. Objections were interposed, but they did not challenge the competency of West as a witness, but the competency of the evidence. The evidence was competent, and, being properly in the record, it must be considered. Hoag v. Wright, 174 N. Y. 36, 66 N. E. 579, 63 L. R. A. 163. West was competent as a witness; the only conceivable interest being a contingent life estate in the premises, cleared by the mortgage gift, as a tenant by the curtesy. Such a contingent interest does not disqualify him as a witness under the provisions of section

829 of the Code. Hungerford v. Snow, 129 App. Div. 816, 114 N. Y. Supp. 127; Bouton v. Welch, 170 N. Y. 554, 63 N. E. 539; Albany County Savings Bank v. McCarty, 149 N. Y. 71, 43 N. E. 427.

I therefore hold and decide that said mortgage for $1,800 is no part of the estate of the deceased, and that the accounting party is not chargeable with the amount of the same, nor with any part thereof.

In regard to the second objection: It appears that in 1887, Van De Walker deeded to Caroline S. Percival 7 acres of land for $755; that in 1889 Smith deeded to Wm. G. Percival about 3¼ acres of land for $155. On February 18, 1907, by a joint deed said Percivals, husband and wife, conveyed both of said parcels of land to Jennie A. Waful for $1,000, all of which sum said grantee paid to Wm. G. Percival, and he deposited at least $1,000 thereof to his own credit. September 30, 1909, he died, and on December 14, 1909, his wife died. There had been no settlement between them. Florence A. West is executrix of her deceased father's will, and her husband, Isaac D. West, is executor of her deceased mother's will. A settlement was had between said representatives. The Wm. G. Percival estate paid to the Caroline S. Percival estate the sum of $1,024. Computing the interest upon Mrs. Percival's share of the proceeds of the sale of her share of the land sold to Mrs. Waful from the date of the payments as shown by the exhibits, and assuming that Percival collected his proportionate share first, we find the interest to be $116.39. The executrix consents that the claim be reduced to $961.39, and that her account be surcharged with $62.61.

The executrix's version of this whole transaction seems sufficiently supported by evidence. The contestants have utterly failed to bear the burden, cast upon them by law, to establish their contention that this item is not a just claim against the estate in the amount of $961.39.

[3] When a representative of an estate on final accounting produces vouchers for sums paid out by him for which he seeks credit in his account, and which account is sworn to, the burden is cast upon the contestants to show that the items paid by the representative, and represented by the vouchers, were not just debts or claims against the estate. Matter of Sprague, 40 App. Div. 615, 57 N. Y. Supp. 1128, affirmed 162 N. Y. 616, 57 N. E. 1125.

The item of the executrix's account herein is allowed at $961.39, and her account is surcharged with $62.61, being the difference between $1,024 paid by her and $961.39 the amount which she should have paid.

[4] The third objection deals with the item of $112 paid to Ormetta Percival for alleged nursing of the decedent's widow during the quarantine period of 40 days. Section 204 of the Real Property Law (Consol. Laws 1909, c. 50) provides:

"A widow may remain in the chief house of her husband forty days after his death, whether her dower is sooner assigned to her or not, without being liable to any rent for the same; and in the meantime she may have her reasonable sustenance out of the estate of her husband."

The facts show that said Ormetta Percival, in response to a telephone call, left Syracuse for Camden to nurse Wm. G. Percival, de-

ceased, but found him dead on her arrival. She is an unlicensed nurse, and the wife of a nephew of deceased, and testified, without objection, that after the funeral she stayed at the request of the widow, who was up and around the house each day, part of the time, and took her meals at the table, excepting that some mornings toast, a cereal, and sometimes an egg were taken to her. The widow and nurse were the only persons in the house, and they slept in adjoining rooms. Some medicine was given to the widow, who was about 70 years old. The executrix herein, and sole legatee of the widow, testified that the doctor said that:

"There wasn't a diseased organ about her, and that she was carrying a burden that she didn't dare reveal. She knew there had been some crooked work done, and broke down under it."

The doctor called once during the first week the nurse was there. At the close of the quarantine period the nurse was dismissed, and the widow went to the home of her daughter Florence.

The families of the two sisters are very hostile. It seems quite plain to me that the statute has been invoked to reduce the residuum of a hostile branch of the family rather than to provide a needed "reasonable sustenance" for the widow. This hostility was seemingly shared by the widow, as she left her estate of about $1,600 to one of her two daughters, Florence, at whose house she died. As far as the evidence shows, no nurse was provided for the widow after the expiration of the quarantine period, nor was any doctor sworn as to her physical condition.

A widow who has not "a diseased organ about her," and whose only ailment was the knowledge that "there had been some crooked work done," and who was about the house daily, and able to eat toast, cereals, and eggs, is not entitled, under a fair construction of the statute, to a nurse as a part of "her reasonable sustenance." The item of $112 paid to Ormetta Percival is disallowed and the account of the executor is surcharged with the same and interest thereon at 3½ per cent. from July 25, 1910, the date of payment.

The executrix paid her attorneys $467.54 for services. This amount was involved in the objections, and one of the attorneys testified to the amount of work done and its value. The contestants offered no evidence against the bill. On the record, and in view of the size of the estate, I deem the amount paid reasonable, and allow the same in full.

During the trial the West note, in amount of $50, not included in the account, was paid. The note was without interest. It should have been collected and the money put at interest. The account of the executrix is surcharged with the sum of $50 and interest thereon, at 3½ per cent. from May 31, 1911, one year after the executrix's appointment.

[5] There is another feature of this case to be considered, which deals with the question as to whether certain provisions in the will of the deceased were adeemed by a transfer of real estate. January 19, 1899, the deceased, William G. Percival, made his will, which was probated May 31, 1910, by which he left the life use of one-half of all

of his property, real and personal, to his wife, Caroline S. Percival. He gave a legacy of $2,000 to his granddaughter, Grace Timian Mann. To his daughters, Florence A. West and Louise A. Timian, he left the life use of an undivided one-half of his estate. He provided that upon the death of said wife all of the property of which she had a life use should go absolutely to his grandson, Clayton A. Timian, and that upon the death of either of said daughters the share of the one so dying should go to the heirs of her body, share and share alike; if she left no surviving heir or heirs, her share was given to said grandson, Clayton A. Timian, absolutely. Thereafter the deceased gave to his daughter Florence A. West a mortgage which he held on her home, on which there was due about $1,000; on February 20, 1907, he deeded to his other daughter, Louise A. Timian, a block in Camden, N. Y., valued at $3,500; on February 4, 1907, he deeded to said Clayton A. Timian the "Shirt Factory," so called, in Camden, N. Y., which included the personal property, amounting in all to $15,000.

The executrix, Florence A. West, contends that the deed to her sister, Louise A. Timian, was given in lieu of her interest in the estate and in ademption thereof, and that the deed to Clayton A. Timian was given in lieu of his interest in the estate and in ademption thereof, and that neither should further share in the estate. The contestants, the legatees, contend that no facts have been shown upon which an ademption can be based, nor from which a presumption of ademption can arise.

[6] The English authorities, and those of other states, as well as of our own state, support the proposition that if a father, or one standing in loco parentis, gives a legacy to a child, it is understood as a portion, though not so described in the will, and if afterwards, upon marriage or any other occasion calling for it, he makes an advancement to that child in the nature of a portion, such provision or portion, if of an equal or greater amount than the legacy, certain and contingent, of the same kind with it, and if no other distinct object be pointed out, will be held a complete ademption of the legacy; if less, an ademption pro tanto. 13 Am. & Eng. Ency. of Law, 92.

The deceased was not the father of Clayton A. Timian, but it is claimed by the executor that he stood in loco parentis. The facts necessary to establish that relation may be proved by extrinsic evidence, such as his general conduct towards the child, or by intrinsic evidence from the nature and terms of the gift. The evidence shows that Clayton A. Timian is the only grandson of the deceased, and that from early childhood the two were companions. While the boy had parents with whom he lived, yet he sought out his grandfather at every opportunity, and the grandfather frequently kissed and caressed him and bought him pets. He expressed fear that the boy would not be properly brought up and educated. When old enough to work, he endeavored to procure employment for him in the Water Wheel Works, at Camden. He failed in this because of the refusal of the son-in-law, West, to take the boy; West claiming that he had not sufficient educa-

tion, and ought to be sent to school. The deceased then sent him to Cazenovia Seminary.

A close friendship existed between the boy and his grandfather from boyhood to manhood, and a general supervision was exercised by the deceased over the course and conduct of said grandson. The deceased seemed very anxious to establish his grandson in business. He said to Mr. West, his son-in-law:

"I have always promised to put that boy in business, and I am going to do it."

He afterwards built a shirt factory, which he and the boy ran until he deeded it to him in February, 1907, and the boy is now running it.

From these and other facts not referred to it seems clear that it was the intention of the deceased to watch over, educate, and establish in business his grandson, and for that purpose it was clearly his intention and he did place himself in loco parentis. This relation being established, the question now arises as to what was the intention of the deceased, keeping in mind the provisions of his will, when he deeded the shirt factory to his grandson, Timian. Did he intend to adeem in whole or in part the prior testamentary provisions in his favor?

Seven or eight years after the testator made his will, in which he provided, among other things, that, subject to the life use of his widow, his grandson should have one-half of his estate, he built a shirt factory and stocked it, took the grandson into business with him, and afterwards conveyed the factory to. him, with its contents, which the evidence shows was worth at the time of the conveyance $15,000. One witness testified that, at the time of the execution of the deed, the deceased said that he had given the shirt factory to "Clate," meaning his grandson, and that was all that he would get. That was his share. Four or five witnesses testified that subsequently to the execution of the deed the deceased told them he had given the shirt factory to Clate, his grandson, and that was to be his share of the estate, and that was all he would get.

It is urged on behalf of Timian that he is a residuary legatee, and the principle of ademption does not apply to such a legacy, and that the testator, having lived two years after the conveyance to Timian without changing the provisions of his will, intended that Timian should have the shirt factory, and also should receive all the benefits provided for him in the will.

In support of the first proposition, Hays v. Hibbard, 3 Redf. Sur. 28, is cited. The learned surrogate in that case in support of his proposition cites 2 Williams on Executors, 1143. The same author at page 1142 says:

"It was formerly considered that, where the bequest to the child is of a residue or part of a residue, that subsequent advance cannot operate as an ademption, because such a gift cannot be considered as a legacy of a portion, which must mean a legacy of a definite sum. But a contrary doctrine is now established." Allen v. Allen, 13 S. C. 512, 36 Am. Rep. 716.

[7] Authorities are of little use, except as a general guide upon the subject of the controlling principles of law, as each case must rest

on its own facts. The whole question is one of intention. Langdon v. Astor's Executors, 16 N. Y. 9. "In the matter of ademption of legacies, whether the advance made was intended as an ademption or not can only be gathered from the circumstances surrounding each individual case, for which purpose parol evidence may be adduced." Wallace v. Du Bois, 65 Md. 153, 4 Atl. 402.

[8] It is contended by Timian that declarations of a testator cannot be proven to establish his intention of adeeming a legacy by means of subsequent advances to the legatee, except where they are made at the time of making the advances and with a view of giving character to the transaction, citing De Groff v. Terpenning, 14 Hun, 301. In that case the evidence was taken under objections. In this case the witness Morss, without objection, testified that, at the time of the execution of the deed, the deceased stated in substance that the shirt factory was all that Timian was to have out of his estate, and several witnesses testified to kindred subsequent declarations. "The declarations of the testator, whether made in the legatee's presence or not, are competent evidence to prove an ademption." Van Houten v. Post, 32 N. J. Eq. 709.

Where declarations of a testator are received without objection and without motion to strike out the testimony, there is no principle of law which demands that they should be disregarded. Being in the case, they constitute a material part of the record, and it is the duty of a court or jury, as the case may be, to consider them. Ganson v. Tifft, 71 N. Y. 52. It is entirely clear that a party who has sat by during the reception of improper evidence without properly objecting thereto, and has taken his chance of advantage to be derived therefrom, has not, when he finds such evidence prejudicial, a legal right to have the same stricken out. Matter of Morgan, 104 N. Y. 74, 9 N. E. 861. The failure to object to evidence of declarations of deceased so distinguishes this case from the De Groff Case, supra, that it has no application as an authority upon the question under consideration.

Phillips v. McCombs, 53 N. Y. 494, and Reynolds v. Robinson, 82 N. Y. 104, 37 Am. Rep. 555, are not in point. It was sought, under objection, to prove the declarations of the testator, made to the scrivener, at the time the will was drawn, for the purpose of showing the intention of the testator. The will, if clear, is the best evidence of such intention. It would be error to receive such declarations in the face of a proper objection. In the case at bar, the declarations were received without objection and upon the subject of the testator's intent to adeem.

The deceased made his will in 1899, and made no change by transfer or otherwise in his estate until May, 1905, at which time he transferred to his daughter Florence a mortgage of $1,800, which he held against her; February 4, 1907, he conveyed to his grandson, Clayton A. Timian, a shirt factory worth $15,000; February 19, 1909, he conveyed to his daughter Louise A. Timian a brick block, so called, worth $3,500. The inventory filed by the executor showed an estate of $14,-167.74. The testator died in 1910. All of these transfers were to

beneficiaries named in the will, so that at the time that deceased began to transfer his property his estate totaled about $32,667.74.

[9] If the deed of the shirt factory had not been given, Timian would have its value under the first and fourth paragraphs of the will, provided he survived the testator's widow. But the testator was determined to establish Timian in business, and, to make sure of it, he deeded him the factory. It is urged by the executor that the testator having declared at the time of, and several times subsequent to, the giving of the deed to Timian, that that was all he would get, intended thereby to adeem the residuary provision of his will, as well as the first and fourth paragraphs. The answer is that:

"The declarations of a testator can never be resorted to for the purpose of contradicting, or even explaining, the intentions expressed in the will." Williams v. Freeman, 83 N. Y. 561; Reynolds v. Robinson, 82 N. Y. 104, 37 Am. Rep. 555.

"No will in writing * * * shall be revoked, or altered, otherwise than by some other will in writing or some writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed," etc. Decedent Estate Law (Consol. Laws 1909, c. 13) § 34.

[10] Timian is the only residuary legatee, and, if he is eliminated by ademption, then the testator died intestate as to a portion of his estate, a thing never presumed, and never permitted by the courts if any other course is open. "There is always a presumption that the testator did not contemplate intestacy, and a construction that will result in even partial intestacy is not to be adopted, if a different construction is permissible." Matter of Miner, 146 N. Y. 121, 40 N. E. 788; Johnson v. Brasington, 156 N. Y. 181, 50 N. E. 859; Matter of Hammond, 74 App. Div. 547, 77 N. Y. Supp. 783.

On all questions of intent, the testator is a proper subject for consideration. He lived in the village of Camden, N. Y., farmed it, dealt in real estate advantageously, made money, and safely invested it. The inventory shows nine real estate mortgages, six promissory notes, $500 in United States bonds and two land contracts, and $1,569.59 in three different banks, aggregating, with the widow's provisions out, $14,-167.74, all at interest, and so securely and wisely invested that the estate sustained a loss of only $200. Such a man presumably comprehended the nature and extent of his property, and had well in mind the objects of his bounty, and fully grasped the contents of his will and the force of its provisions. So far as the record shows his love for his grandson continued to the day of his death. He trusted him with the combination of his safe, and he was the only one who could open it after the testator's death.

On what theory, then, can it be held that the testator intended, when he gave the deed to Timian, to provide less for him than he had given by will? If the shirt factory had not been deeded away, and Timian took under the provisions of the will alone, he would ultimately secure, if he survived his aunt and mother, approximately $25,000, or about three-fourths of the entire estate. Did the testator, by giving him said deed, intend that he should have less than the will provided? I think not. The testator knew when he gave the deed to Timian that

his net estate was about $30,000. He did not intend by giving that deed to lessen the half of his estate which the will gave to his two daughters for life, as there is no apparent reason therefor. In Benjamin v. Dimmick, 4 Redf. Sur. 7, the court said:

"The provision by the will is presumed to be a portion, because it is a provision from a parent for his child, and the subsequent gift of a portion is presumed to be a satisfaction of such portion given by the will, either wholly or in part."

To give more or less to a child than the will provides, except upon the clearest proof of intent on the part of the testator to add to or cut down the provisions of his will, would be, in effect, to rewrite portions of the will, never permissible when the meaning is apparent. I therefore hold and decide that the deceased, William G. Percival, when he deeded the shirt factory to Timian, intended said transfer to be an ademption of the testamentary provisions to Timian set out in the first and fourth paragraphs of his will, and did not intend to adeem the residuary provisions of his will, or any part thereof. This view leaves the will intact, and gives Timian the amount he would have had under the first and fourth paragraphs of the will, as near as it can be figured, had the testator died with the shirt factory a part of his estate.

Throw out the proven declarations of the testator as regards his intention in giving the deed to Timian, and still by virtue of the relation of the testator and Timian, the testator standing in loco parentis, the law presumes that the testator intended to extinguish the provisions of the will in Timian's favor to the extent of the advancement made. This doctrine proceeds upon the theory that a bequest to a child is intended as a full portion of the estate, and that an advance in the lifetime of the testator is a part of said portion, delivered in advance, and is deemed to be an ademption pro tanto of the legacy or portion secured to the child by the provisions of the will. Lawrence v. Lindsay, 68 N. Y. 109.

There is another doctrine, that of presumed satisfaction. For instance, where a parent or other person in loco parentis bequeaths a legacy to a child or grandchild, and afterwards in his lifetime gives a portion or makes a provision for the same person, without expressing it to be in lieu of the legacy, it will, in general, be deemed a satisfaction or ademption of the legacy. Langdon v. Astor's Executors, 16 N. Y. 9, and cases cited.

[11] The remaining question to be decided deals with the fifth paragraph of the will, which gives Florence A. West and Louise A. Timian a life use of one-half of the estate of the deceased. The testator in his lifetime, and about two years before he died, and after the making of his will, deeded to said Louise A. Timian, one of his daughters, a block in Camden, which the evidence shows was worth $3,500. Two witnesses testified, without objection, that, subsequently to the delivery of the deed, the deceased stated that "that was all Louise was to have," or that in substance. Amanda Seifert testified:

"They [meaning the Timians] have got their home. I gave them what I thought was right, and that is all they get; and the rest of the property will go to your aunt, Caroline, and Florence."

Witness West testified that the deceased said to him:

"I have given to Louise the block and the dwelling house on Washington street, and that is her share."

The executor insists that, upon this evidence and the legal presumptions that arise by virtue of the relation of parent and child, it was the intention of the deceased, when he conveyed the block to his daughter, that she should not further share in his estate. The amount shows in the hands of the executor $12,490.90 in cash and good securities, out of which must be deducted $2,000, a legacy to Grace Timian Mann, leaving $10,490.90, which, if divided between the two daughters, Florence and Louise, as provided by the will, each would have the life use of $5,245.45, subject to the commissions of the executrix and the expenses of this accounting.

The portion which under the provisions of the will would go to Louise A. Timian is in excess in amount of the value of the block conveyed by the deceased to said Louise A. Timian. Did the deceased, when he conveyed the block, really intend to give Louise less in value than he had provided for her in his will? If she would sell the block for $3,500, put the money at interest, she would only have an income from it at 6 per cent., which is $210; whereas, if she had the portion provided for her in the will at the same rate of interest, it would net her $314.73, making a difference against her of $104.73. Should it then be held that the conveyance of the block to her was an ademption of her entire interest under the will? The rules laid down and authorities cited in considering the conveyance to Timian apply to the question here involved. We are dealing here with a father and daughter, and with no proof in the case that the father's feelings towards the daughter had changed at any time subsequent to the making of his will.

I find no case where the question of an ademption with a life use provision of a will has been involved. I see no good reason for not applying ademption in case of a residuum or a life use, where the amount of the residue or the amount of the life use can be definitely ascertained as in this case. Here the life use is a definite amount, and I hold and decide that the deceased, when he gave the deed of the block to his daughter Louise, intended to advance her out of the life use the value of the block, $3,500; in other words he intended to give her a portion in advance of what she would ultimately have under his will, and he intended that the $3,500 should be taken out of the one-fourth of his estate, the life use of which he had given her, and that she should have the life use of the difference between the $3,500 and the amount of the net one-quarter of his estate.

Unless this view prevails, a gross inequality will be forced upon Florence, one of the two daughters of the deceased, which was never intended by the testator. His feelings for both of his daughters were the same, so far as the record discloses. Independent of his declarations, if they should be held insufficient to establish his intention to adeem, I maintain that the presumption to adeem arises from the very relation of the parties. As we have seen in Langdon v. Astor's Executors, supra, the question of ademption is always one of intention,

and, when that intention is once established, we are unable to perceive any good reason why, where the proof shows an intention to adeem, or where that presumption arises by reason of the relationship of the parties, not only a pecuniary legacy, but also an interest in the residue, or in a life use, such intention should not be allowed full effect. In Allen v. Allen, 13 S. C. 512, 36 Am. Rep. 716, a well reasoned case, the court said:

"We have not been able to find any case in which an interest in the residue has been held to be adeemed by a subsequent advance, but we do find that in the case of Lady Thynne v. Earl of Glengall, 2 H. L. Cas. 131, upon a full review of the authorities, it was held that a bequest of a residue will, according to its amount, be a satisfaction of a portion, either in full or pro tanto, as the case may be; and it is difficult to understand how, upon the same principle, we can avoid holding that a portion by settlement or otherwise shall in like manner be a satisfaction of a previous bequest of a residue to the extent that the former may cover the latter."

So that no seeming injustice may be done by a parent to his children, where no reason for favoritism is shown, I hold and decide that, where the evidence shows such to be the intention, a life use, where the amount of the same is ascertainable and definite, may be adeemed either in whole or in part by an advance made subsequently to the date of the execution of the will, either in money, or an equivalent, the value of which can be definitely fixed.

This decision gives full force and effect to all the provisions of the will, and leaves the children of the testator and his grandson, notwithstanding the advancements, in the same financial condition that they would have been in, had the advancements not been made, and had they each taken under the provisions of the will. If this decision violates any rule of law, it has the advantage of being pregnant with the oil of equity.

In dealing with the affairs of a family, one ounce of equity is worth a ton of dynamite.

Decreed accordingly.