MARIETTE HINE and others *vs.* LEANDER HINE and others, executors, &c.

39   507
71h 360

39b      507
39 Mis¹  73

When a parent, or other person *in loco parentis*, bequeaths a legacy to a child or grandchild, and afterwards, in his lifetime, gives a portion or makes a provision for the same child or grandchild, without expressing it to be in lieu of the legacy, it will in general be deemed a satisfaction or ademption of the legacy.

A legacy to a child, regarded as a portion, is a deliberate distribution to such child, or among his children, of such portions of his estate as the testator thinks fit. If the testator, during his life, advances that which he has adjudged to be the due portion of the legatee, the law presumes that he has satisfied the portion; and this presumption must prevail until overcome by evidence of a contrary intent on the part of the testator.

A gift by way of advancement, in order to work a satisfaction of the legacy, need not be in all respects identical with the latter. If they are substantially the same, a small variance in the time of payment, or other trifling difference, will not vary the application of the rule.

When a legacy is given for a particular purpose specified in the will, and the testator, during his life, accomplishes the same purpose, or furnishes the intended legatee and beneficiary with money for that purpose, the legacy is satisfied.

THE plaintiffs, as widow and heirs at law of Orlando Hine, deceased, bring this action to compel the executors of Elkanah Hine to carry out and execute a provision in the will of the latter in favor of Orlando Hine and his heirs. Elkanah Hine made his will May 24, 1852, and died August 9, 1857. Orlando Hine died April 12, 1858. At the time of making his will Elkanah had three sons, of whom Orlando was one, and two daughters; and by his will he recited that in the first division of his property it was his intention to give to each of his sons two thousand dollars, and to each of his daughters one thousand dollars; that to one of his sons he had made the advance, partly in aiding him to buy a farm, and the residue by deeding to him a piece of land; and that to another of his sons he had made the advance by conveying to him a farm and taking from him a mortgage for the residue of the purchase money, after deducting the $2000; that he had given to one of his daughters four hun-

dred dollars of her portion in land of that value, and to the other one hundred dollars ; and that he had given and advanced to his son Orlando four hundred dollars. By the third clause of his will he gave to his executors sixteen hundred dollars in trust for the purchase of a farm for the benefit of Orlando, the title to which was to be held by the executors for three years after its purchase, or until, in the discretion of the executors, it would be prudent for the interest of the family of Orlando to vest the title in him, at which time the title was to be vested in Orlando, or in case of his death in his heirs. By the residuary clause the children were to share equally in the residue after the payment of the legacies and satisfying the other provisions of the will, under which about four thousand dollars will be divided. The testator directed his executors to give up to his son Orlando all notes or other obligations which he held against him, to be canceled, as they were included in the amount advanced to him.

About April 1, 1853, the testator advanced to his son Orlando fifteen hundred dollars, to aid him in paying for a farm which he had contracted to purchase, and the money was so applied and the farm conveyed to the son. The testator took from Orlando a receipt in these words :

" $1500.                  *Lafayette, April 1st,* 1853.

Received of Elkanah Hine fifteen hundred dollars, to make a payment on the farm I bought of Norman Baker, which money I am to account for without interest.

                              ORLANDO HINE."

And after that, the testator let Orlando have about one hundred dollars on two occasions, taking his notes for the amounts.

The cause was tried before a referee, and on the trial it was found, under objection, that Orlando applied for the fifteen hundred dollars as a part of his portion of the estate of his father, and that the testator gave it to him as such portion ; and that both Orlando and the testator subsequently, on different occasions, spoke of it as an advance of so much of

the amount intended for him, under the will, and as a part of his portion of $2000. The referee found that the same was advanced with the intention on the part of the testator of satisfying to that amount the legacy of $1600 to said Orlando, mentioned in the will, "and that the remainder of the legacy had been satisfied by the testator in his lifetime."

The complaint was dismissed, and the plaintiffs appealed.

*B. Davis Noxon,* for the appellants.

*C. Andrews,* for the respondents.

*By the Court,* ALLEN, J. The testator, in the body of his will, has expressly avowed his intention to make his children equal in the distribution of his estate by advancements during his life and the portions secured to each by his will, and the judgment of the referee clearly falls in with and carries out this intention. And from any express declarations of the testator, or any direct provision in the will for an ademption of legacies, the presumption of equity is against double portions. There has been some fault found with the rule as a rule of presumption or of evidence, and some with the reasons upon which it has been supported, by which a legacy or portion given by will is deemed satisfied by an advancement during the life of the testator. But the rule is unquestioned and the presumption of evidence well settled. It is carefully stated in *Langdon* v. *Astor's Ex'rs,* (16 *N. Y. Rep.* 34,) "for instance, when a parent or other person *in loco parentis* bequeaths a legacy to a child or grandchild, and afterwards, in his lifetime, gives a portion or makes a provision for the same child or grandchild, without expressing it to be in lieu of the legacy, it will, in general, be deemed a satisfaction or ademption of the legacy. This is upon the ground that the legacy is considered a portion, and if the testator afterwards advances the same sum upon the child's marriage or any other occasion, he does it to ac-

complish his original object in giving a porfion. Under such circumstances, it is held to be intended by the testator as a satisfaction and not a double portion." This is the spirit and nearly the language of the leading cases and of the elementary writers upon this branch of the law. (*Story's Eq. Jur.* §§ 1111, 1112. *Ellison* v. *Cookson*, 1 *Vesey, jun.* 100. *Trimmer* v. *Bayne*, 7 *id.* 508. *Hinchcliffe* v. *Hinchcliffe*, 3 *id.* 516. *Carver* v. *Bolles*, 2 *R. & Mylne*, 301. 1 *Roper on Legacies*, 374. *Debeze* v. *Mann*, 2 *Bro. Ch. Cas.* 166.) A legacy to a child regarded as a portion is a deliberate distribution to such child, or among his children, of such portions of his estate as the testator thinks fit. If the testator, during his life, advances that which he has adjudged to be the due portion for the legatee, the law presumes that he has satisfied the portion ; and this presumption must prevail until overcome by evidence of a contrary intent on the part of the testator and devisor. The gift *inter vivos* or donation by way of advancement, may not be in all respects identical with the legacy or portion given by the will, in order to work a complete satisfaction of the latter. If they are substantially the same, a small variance in the time of payment, or other trifling difference, will not vary the application of the rule. (*Story's Eq. Jur.* § 1110. *Davys* v. *Baucher*, 3 *Young & Coll.* 392. *Pym* v. *Lockyer*, 5 *M. & C.* 29.) The question in all the cases depends upon the declared or presumed intentions of the donor. When a legacy is given for a particular purpose specified in the will, and the testator, during his life, accomplishes the same purpose, or furnishes the intended legatee and beneficiary with money for that purpose, the legacy is satisfied. (1 *Roper*, 365. *Debeze* v. *Mann, supra. Rosewell* v. *Bennett*, 3 *Atk.* 77. *Carver* v. *Bolles*, 2 *R. & M.* 301. *Trimmer* v. *Bayne, supra.*) In this case the purpose and object of the legacy, as expressed in the will, and the purposes for which the money was given by the testator, in his lifetime, were the same, to wit, to do for his son Orlando what he had done for each of

his other sons, aid him to the amount of two thousand dollars in the purchase of a farm. The provision for the family or heirs of Orlando was incidental and contingent, and gave to the plaintiffs no vested right in the portion. The reference to the heirs of Orlando in the will and in the provisional arrangement for a conveyance of the farm to them by the executors, in case of the death of Orlando before he should become entitled to the conveyance, is no evidence of an intent on the part of the testator to give to Orlando the sixteen hundred dollars as a bounty, in addition to his portion. In *Carver* v. *Bolles*, (*supra,*) the portion by will was secured to the children of the legatee, (a daughter,) after her death, she having but a life estate in it, and yet it was held adeemed by an advance of a large part of the amount to the daughter, absolutely, upon her marriage, and the conveyance of the residue upon the trust of the marriage settlement, differing entirely from the trusts of the will. The testator in framing his will sought to make the legatee equal with his other daughters, whom he advanced in like amounts upon their marriage, and this intent was fully carried out by the provision upon the marriage. So here the prominent idea was equality among the children, and that was accomplished by the advance, after the making of the will, to aid Orlando in purchasing a farm. The court does not inquire whether the portion by the will is entirely and absolutely to the child, or whether the subsequent advance is in the precise form indicated by the will. The advancement not being a performance of a covenant or satisfaction of a debt, it is presumed to be a satisfaction of the portion, although differing in some of the circumstances from the provisions of the will. (*See per Lord Eldon, in Trimmer* v. *Bayne, supra.*) A stricter rule is observed as to the satisfaction of a covenant or debt. (*Clark* v. *Sewell*, 3 *Atk.* 98. *Monck* v. *Ld. Monck*, 1 *Ball & Beat.* 304. *Sparkes* v. *Cator*, 3 *Ves.* 530.) The presumption upon the will was that the advancement was intended in satisfaction of the portion, and the

onus was upon the plaintiffs to overcome that presumption by showing a different intent. Parol proof was competent, not to vary the terms of the will, but to establish the acts and intents of the testator, either in behalf of the plaintiffs in rebutting the presumption of satisfaction, or of the defendants in reply to such evidence in support of the alleged satisfaction. (*Langdon* v. *Astor's Ex'rs, supra. Williams* v. *Crary*, 4 *Wend.* 443. 2 *Williams on Executors*, 827.) The note or receipt taken upon the advance of the principal sum, rather strengthens the presumption contended for by the defendants. It was an acknowledgment of the receipt of fifteen hundred dollars, which Orlando was " to account for without interest." Orlando had been intemperate and imprudent, and the very form of the voucher indicates, not a loan, but an advance in a way to give the donor a control or influence, to some extent, over the son, in place of that absolute control which the executors were to have in the use and appropriation of the legacy for his benefit. The purpose of the father was not to make the son his debtor, but by a discreet and prudent advance of the portion during his own life to encourage and help on the unfortunate son, and enable him to provide for himself and his family, and dispense with the tutelage of the executors. There was no provision to pay, or terms of payment fixed, and no security asked or given. It was an advance of a trifle less than the portion, and for the same purposes for which the portion was set apart and appropriated ; and the voucher was taken in reference to it, and the accounting, in the minds of the parties, was an abatement of the legacy *pro tanto.* All the circumstances and acts, as well as the declarations of the parties, confirm this view of the case, and the judgment of the referee must be affirmed with costs.

[ONONDAGA GENERAL TERM, April 7, 1863. *Allen, Mullin, Morgan* and *Bacon*, Justices.]