Matter of the Applications of HERMAN A. KORTE, for the Adoption of MARY ELLEN CORCORAN, and ALEXANDER PELL, both Minors.

(County Court, Kings County, November, 1912.)

**Adoption — of children under care of charitable institution — asylums.**

> A Roman Catholic institution stands *in loco parentis* as to children surrendered to its custody pursuant to its statutory power to receive deserted children and those surrendered to it and place them by indenture or adoption.
>
> Where two foundlings in such an institution were surrendered to a married couple on condition that said children should be brought up in the Catholic faith and the wife dies a member of the Roman Catholic church, an order for the adoption of the children on the petition of the surviving husband who has no definite religious belief cannot be granted without the consent of the institution.

PETITION for an order of adoption.

Hillquit & Levene, for petitioner.

Bayard L. Peck, for respondent, New York Foundling Hospital.

FAWCETT, J. The petitioner in these proceedings, Herman A. Korte, seeks an order, authorizing the adoption by him of two minor children, Mary Ellen Corcoran, aged eight, and Alexander Pell, aged ten. Both children are foundlings originally surrendered to the custody of the respondent herein, The New York Foundling Hospital, a

Catholic institution, which has by statute the power to receive deserted children and those surrendered to it, and place children by indenture or adoption. In 1904 and 1905, respectively, the children Alexander Pell and Mary Ellen Corcoran were placed by the hospital in the home of Herman and Elizabeth Korte. Mrs. Korte, who died a few months ago, was a member of the Catholic church. In 1911 proposed agreements of indenture for the two children were sent to Herman and Elizabeth Korte, which it is contended were never properly executed by the Kortes, and, even if executed, simply gave to them the care and custody of the children, provided such foster parents complied with the covenants therein set forth, until the children were twenty-one and eighteen years old, respectively.

Mr. Korte is not a Catholic, the petition herein stating that he is a Protestant, and there being some evidence, in the affidavits submitted, that he is what is termed a " free-thinker." Section 115 of the Domestic Relations Law, speaking of adoption of children under the care of a charitable institution, provides that " every such child shall, when practicable, be given to persons of the same religious faith as the parents of such child." The children were in early years taken to Boston, but are now living and attending school in this county. The natural parents of the children have not been found, but it is submitted that both of them having been surrendered to a Catholic charity were presumably of Catholic parentage.

Upon the submission of the question here involved originally, the court, seeking light, required of the respondent, which opposed the applications, additional affidavits as to facts ascertained relative to the home of petitioner, and the education and environments of the children, and asked for a full statement of the grounds for the opposition.

Such an affidavit was submitted and it sets forth substantially the following facts: that the child Alexander Pell was baptized into the Catholic church in 1903; that the mother of the child, Mary Ellen Corcoran, was a Roman Catholic, according to the records of the hospital; that the petitioner and his wife formally agreed to baptize said child

County Court, Kings County, November, 1912. [Vol. 78.

at the earliest opportunity; that the agreements of indentures sent to the Kortes were not intended as consents to the legal adoption of either of said children; that the Kortes when they received the children did promise that they should be reared in the Roman Catholic faith; the children attend public school; and, finally, that the said children have not received and are not now receiving the instruction and education in the Roman Catholic faith which the petitioner and his wife promised should be given to them, and are not receiving any religious training or education whatsoever; that the mother of the petitioner has stated that she, her husband and her son, the petitioner herein, being all members of the household where these children are living, are so-called free-thinkers, and that they do not intend to bring the children up in the Roman Catholic faith; that the petitioner himself has admitted that he is a so-called free-thinker, and has no definite religious belief.

The respondent, The New York Foundling Hospital, through its agents, has investigated the home of the said Herman Korte, and is unwilling to consent to the adoption and objects to the granting of the proposed order of adoption.

It is also alleged that petitioner's business takes him away from home for varying periods of time; he also stated he intended to leave his mother's house and secure a place where he and the children could live, " he being apparently confident that he could find a competent housekeeper who could look after the children and see to the details of the domestic management."

It is urged that the death of petitioner's wife has removed the loving care of a mother from the children and has deprived them of the benefit of religious teaching; that the children are being educated without religious instruction of any kind, and will undoubtedly drift into free-thought or atheism.

On the other hand, the petitioner contends that the children have had a " general religious, ethical and moral training since they were old enough to appreciate the value of such instruction; that your deponent is not attached to any specific religious creed, nor is he a member of any particular

Misc.]        County Court, Kings County, November, 1912.

church, but does believe in the teachings of Christ and Christianity, and has brought up the children in that way; that he has endeavored to teach them the idea of God and a Supreme Being; and above all has given them at home general moral and ethical instruction. That deponent has not sent the children to any particular church " but prefers, in effect, to permit them, when at a suitable age, to select for themselves the particular Christian faith which appeals to them.

Finally, and apparently inconsistently with this position thus stated, the petitioner states that he has placed the children in a Methodist Sunday School.

These are briefly the facts and the contentions of both sides of this controversy, and indeed it presents a most difficult and vexing question for the discretion of the court. It would seemingly require the judgment of a Solomon to dispose of the issues raised here to the satisfaction of all concerned, keeping in mind always the spiritual, moral and temporal welfare of the children, the innocent victims of the circumstances. Should the petitioner re-marry — as is not only possible but probable — the question would be still more involved and the position of the children, in the event of issue of such marriage, an extremely delicate one.

The case is still further complicated by the legal technicalities urged by both sides, in favor of and opposing the proposed adoption. These questions may be briefly disposed of without elaborating them here for the reason that the solution proposed by the court may render a decision of these questions unnecessary.

It is contended that, without the consent of The New York Foundling Hospital, the court has no power to grant the order prayed for, and that the indentures executed by the respondent in 1911 may not be interpreted as such consent required by law. Further that the fact that petitioner is a Protestant and the children Catholics makes the denial of the petition necessary. Furthermore, it is questioned whether or not this court has power to sign an adoption order without notice to the natural parents of the child. Matter of Livingston, 151 App. Div. 1. But under section 111

County Court, Kings County, November, 1912.    [Vol. 78.

of the Domestic Relations Law the consent of a parent who has abandoned the child is unnecessary.

The court is of the opinion that the hospital under the facts and circumstances of this case stands *in loco parentis*. Its surrender of the child in each case was conditional upon its being brought up in the Catholic faith, and not an absolute surrender as would deprive it of that relationship. I am constrained to hold, therefore, that the consent of the hospital is necessary in this case. No one is more keenly cognizant than I of the liberal policy of our Constitution and our laws towards religious liberty and freedom to worship as one chooses, but it would be a manifest wrong to permit these children to be brought up in a condition of pagan unbelief and atheism. As adults, they will have the right to believe as they please, but I must now hold, keeping ever in mind that the welfare of the children is the paramount consideration which guides the court, that the proposed adoption of these children by the petitioner cannot at this time be granted.

However it is not intended by this decision to finally dispose of the matter. I am extremely reluctant to have the children taken back to the hospital and removed from the care and custody of the petitioner, who it seems has developed a real attachment for the children, so much so, in fact, that it is claimed they do not even know that he is not their natural father. I would suggest that both parties to this controversy attempt further conference, and mutually give and take in a true Christian spirit for the welfare of the children. Let the petitioner set aside for the time being his own religious convictions or the lack of them, and place the children under Catholic teaching and religious training for a period of six months as a trial, and perhaps at the end of that time the respondent upon reconsideration will find it possible to consent to the proposed adoption and the application may then be renewed. And in the meantime, and until the further order of the court, the proceedings herein may be stayed.

Ordered accordingly.