In the Matter of the Estate of FRANCES M. BERNHARDI, Deceased.

Surrogate's Court, Queens County, May 4, 1934.

*Mitchell, Taylor, Capron & Marsh,* for Ernest F. Bernhardi and another.

*James Adikes,* for Sarah G. Bernhardi.

*P. Frank Ryan,* for the executors.

HETHERINGTON, S. The decedent's will which has been admitted to probate was executed on April 12, 1918. Under its provisions she gave all her household furniture, wearing apparel, jewelry and other personal effects, and a legacy of $10,000 to Sarah G. Bern-

hardi, her daughter-in-law. The remainder of her estate was given equally to her sons Louis A. and Ernest F. It appears that shortly after the death of her son John on June 2, 1916, Sarah, her daughter-in-law and his widow, came to live with the decedent. They lived together until decedent's death. The friendly relation existing between them is reflected not only in the monetary provisions of the will but also in decedent's appointment of her daughter-in-law as coexecutor with her two surviving sons. Subsequent to the execution of the will, decedent purchased in November, 1919, a guaranteed mortgage in the sum of $4,000 which was registered in the name of decedent and her daughter-in-law, " or the survivor." About the same time, decedent made a similar investment and for like amount which was registered in her name and that of her son Louis A., " or the survivor." Some five years later both were paid off and the proceeds reinvested in two mortgages of $4,000 each, one being registered in the names of " Frances M. Bernhardi and Sarah G. Bernhardi, or the survivor," and the other in like form, except that it was registered in the names of decedent and her son Louis A. On March 10, 1920, decedent made an additional investment of $3,000 in a mortgage of like character, the assignment of which was made over to decedent and her daughter-in-law, " or the survivor of them." Decedent had possession at all times of the last as well as the original and substitute investments. Interest was payable to her on all of them. The investments were found after death among her effects.

The executors are now accounting and seek a determination of the ownership of these investments. Sarah G. Bernhardi asserts title to the two mortgages aggregating $7,000, recorded in the joint names of decedent and herself, by virtue of their form and the fact that she survived decedent. Louis A. Bernhardi, though named as survivor in the remaining mortgage, appears in this proceeding by the same attorneys as his brother Ernest F., and joins with him in claiming " that the foregoing mortgages should either be considered as part of the estate of the decedent herein for the purpose of effecting a distribution under the will, or that the said mortgages should be considered as advancements to the persons named in the instruments as co-owners, and as such charged against the distributive shares to which said persons are entitled under the will."

An adjudication that the mortgages passing to the daughter-in-law by right of survivorship were taken or received in partial satisfaction of her legacy of $10,000 cannot be sustained on the theory that they were advancements. Where there is a complete distribution by will, as here, the doctrine of advancements has no

application, unless the will specifically refers to advancements and defines what previous gift shall be so considered and deducted from the legacy. (*Bowron* v. *Kent*, 190 N. Y. 422; *Ritch* v. *Hawxhurst*, 114 id. 512; *Arnold* v. *Haronn*, 43 Hun, 278.) Where there is no will, advancements may be charged against the distributive share of the distributees. (Dec. Est. Law, § 85, formerly § 96; *Messman* v. *Egenberger*, 46 App. Div. 46.) The statute has no application where there is a partial intestacy. (*Messman* v. *Egenberger, supra; Matter of Farmers' Loan & Trust Co.*, 181 App. Div. 642; affd., 225 N. Y. 666; *Bowron* v. *Kent, supra*.)

It is urged, however, that the mortgages constituted a partial ademption or satisfaction of the legacies. In support of this contention, the doctrine is invoked that where a testator bequeaths a legacy to a child or to a person toward whom he had placed himself *in loco parentis* and thereafter, in his lifetime, gives a portion or makes a provision for such legatee, without expressing it to be in lieu of the legacy, it will, in general, be deemed a satisfaction or ademption, in whole or in part, of the legacy. (*Langdon* v. *Astor's Executors*, 16 N. Y. 9; *Lawrence* v. *Lindsay*, 68 id. 108; *Burnham* v. *Comfort*, 108 id. 535.) Before the foregoing rule can be applied it becomes necessary to determine two questions; one, whether or not the decedent had placed herself *in loco parentis* towards her daughter-in-law, and if so, the other, which is common to both legatees, did the testatrix by placing and taking the mortgages in the form heretofore described make an advance payment or provision in her lifetime for the legatees. A person *in loco parentis* has been defined as one " who *means* to put himself in the situation of the lawful father of the child, with reference to the father's office and duty of making a provision for the child." (2 Williams Executors [7th ed.], p. 652.) The relationship may be shown by acts and declarations of the decedent. (*Langdon* v. *Astor's Executors, supra*.) While most of the cases recognizing the relationship are those where the parties were directly or collaterally related, the assumed office may exist between those not related. The difficulty is to ascertain, what are circumstances sufficient to invest the testator with the assumed relation of parent to the legatee, and the evidence competent to prove that he placed himself in such character. The acts and declarations of the testator should establish that he considered himself in the place of the child's father, and that he intended to discharge the obligations of a parent. The primary obligation of a parent is to care for, support, educate and provide for his child. There must be proof of the assumption and performance of these obligations. Here there is no proof of any declaration, except the will, which is silent

as to the claimed relationship. The mere circumstance that the decedent made generous provision for her deceased son's wife raises no clear inference that she intended to place herself *in loco parentis* to the legatee. The only act tending to support the asserted relationship is the fact that the daughter-in-law, after her husband's death, came to live with the decedent and resided with her until death, a period of about sixteen years. This circumstance is insufficient in the absence of proof, which is lacking here, that the decedent supported, cared and provided for her daughter-in-law. No proof has been furnished that the legatee did not support and maintain herself, or, if unable to do so, that others more closely related to and upon whom the obligation of supporting her might have been imposed, had not done so. Nothing has been shown in my judgment which would justify the conclusion that the decedent, either by act or declaration in her lifetime, or by future provision made in her will, treated or regarded the legatee as her child. They may have lived together in harmony and been united by a strong bond of affection, but these circumstances standing alone do not establish the asserted relationship. These views compel me to hold that the mortgages standing in the joint names of decedent and her daughter-in-law became the absolute property of the latter upon the death of the former by virtue of the survivorship clause, and consequently form no part of the assets of testatrix's estate.

In approaching a solution of the second question, which, by reason of my disposition of the first, will now only affect the interests of testatrix's son Louis A., it might be pointed out at the outset that the gift to him is of the residue and not a legacy of a certain amount. Early it was held that the principle of ademption was not applicable to a bequest of the residue because of its uncertainty and the possibility of it being worthless. (See discussion of English cases, Roper Legacies [3d ed.], p. 376.) Later holdings appear to be contrary. (*Matter of Turfler*, 1 Misc. 58; *Matter of Percival*, 79 id. 567; 2 Williams Executors [7th ed.], p. 647.) To me, it seems that the equitable doctrine of adjusting advances and the presumption against double portions should work an implied ademption where the residue can be definitely ascertained as in this case. There remains, however, the final question whether the mortgage and the testamentary provision can be regarded as *ejusdem generis*. In other words, it is necessary to compare what the decedent gave in her lifetime, if anything, with that given by her will. The taking of the mortgages in both names with the survivorship clause created a joint estate. Ownership of the whole did not come into being until the death of one of the joint tenants. Can it be said that

there was any valid and present gift of the mortgage? In all the cases called to my attention, where an implied ademption was recognized, there was an outright gift *in præsenti*. A gift implies delivery, control of and dominion over the thing given. Here the decedent retained control and dominion over the mortgage, and in addition collected the interest thereon. Whatever she gave only became absolute and effective upon her death. The right to destroy the joint tenancy or the right to take the whole upon death cannot be considered a portion or a gift of the same kind and nature as the testamentary provision. Exercise of control and dominion of the mortgage and the collection of interest rebuts any intention upon the part of the decedent to make a present gift or an advance. She made no payment in her lifetime of that which she provided in her will should be given to the legatee at her death. I am, therefore, of the opinion that the mortgage standing in the joint names of decedent and her son became his absolute property upon her death, and cannot be regarded as partial satisfaction of his testamentary provision. Proceed accordingly.