In the Matter of the Estate of WILLIAM P. WILLIS, Deceased.

Surrogate's Court, Queens County, February 24, 1936.

*Lyon, Lee & Lyon,* for the executors, City Bank Farmers Trust Company and another.

*Cornelius C. Webster,* for Frederick Willis.

*Mitchell, Taylor, Capton & Marsh,* for Margaret W. Hartshorne and another.

*Edwards & Edwards,* for Mary I. Willis and four others.

HETHERINGTON, S.   In the petition for the judicial settlement of their account the executors request a determination as to the division of testator's residuary estate.   Decedent had five children, Frederick, Margaret, Caroline, Davenport and William.   The latter two died prior to September 9, 1931, the date of the execution of his will.   William was survived by his widow, Mary, and four children.   Prior to January 1, 1923, decedent was a senior partner in the firm of William P. Willis & Co., composed of himself, his two sons, William and Frederick, and others.   His will directed that his residuary be divided into four equal parts; one part was given outright to his daughter Margaret, and another part was placed in trust for the benefit of his son Frederick.   The remaining two parts were directed to be held on separate and equal trusts for the benefit of his daughter Caroline and Mary I. Willis, the widow of his deceased son, William.   His daughters, Margaret and Caroline, contend that the will unequivocally directs that the sum of $75,000 be deducted from each of the trust funds directed to be erected for the benefit of Frederick and the widow of William. Both of these beneficiaries and the children of William vigorously oppose these deductions.

The relevant portions of the will provide as follows:

" *14th.*   Whereas, I heretofore advanced to each of my sons William Willis and Frederick Willis, the sum of Seventy-five thousand ($75,000) Dollars, when they started in business, receipts for which advancements I now hold, I desire my executors and trustees to take these advancements into account when they make division of the residue of my estate.

" *15th.*   On the first day of January, 1923, I retired from the firm of William P. Willis & Co., and severed my connections therewith at which time it was mutually agreed that there was due and owing to me from said firm the sum of one hundred seventeen thousand ($117,000) dollars, which sum, instead of withdrawing from said firm, I allowed to remain with them not as an interest in said partnership but with the distinct understanding that the said

sum of money was a loan to the firm payable on demand and bearing interest at the rate of six (6%) percentum per annum. Since my retirement, the said loan has been reduced by a payment of about seventy-nine thousand ($79,000) dollars, so that there is due me now the sum of about thirty-eight thousand ($38,000) dollars, payable on demand; and I agree that this sum of thirty-eight thousand dollars, together with the sum of seventy-five thousand dollars heretofore advanced to him by me, shall hereafter be considered the property of Frederick Willis and shall be taken by him and by my executors as an advancement to him on account of any legacy to be received by him under this my last Will and Testament."

In the 17th paragraph testator directed that his residuary estate be divided into four equal parts and disposed of as aforestated With respect to the trust set up for the widow of his son William, testator provided, among other things, as follows: " My executors, however, shall take into account in setting aside this trust, the fact that I have heretofore advanced to the said William Willis, the sum of Seventy-five thousand dollars for his use in the business of William P. Willis & Co."

On January 2, 1923, a written agreement was made between decedent and his two sons, the material portions of which are as follows:

" *First.* Whereas the father has previously heretofore made a last will and testament under which the said two sons, among others are beneficiaries.

" *Second.* Whereas the father and said sons, among others, are partners of the firm of W. P. Willis & Company doing business at 156 Fifth Avenue, New York City, N. Y.

" *Third.* Whereas it is desired by this writing to record an advance to said two sons by the father, and a proportionate diminishment of their expected inheritance it is

" Agreed:

" *Fourth.* That the father William P. Willis advances to the two sons William Willis and Frederick Willis each the sum of $75,000.00 which advance is to consist of an increase of their principal investment capital accounts as partners in the firm of W. P. Willis & Co. of $75,000 each the aggregate of these advances ($150,000) to be charged against the father William P. Willis, by diminishing his principal investment account on the books of said firm by said sum.

" *Fifth.* In consideration of said advances the son William Willis, promises. and agrees to pay to the father, in equal monthly installments of $375.00 each, interest at the annual rate of 6% on the sum of $75,000 during the lifetime of the father, and upon his death

likewise to his wife Sarah Caroline Willis, during her lifetime, and the son Frederick Willis hereby makes the same agreement to pay the same interest in the same way on the same sum to the same parties.

" *Sixth.* Upon the death of the father William P. Willis the interest of the two sons under his will shall each be decreased by the sum of $75,000.00 to equalize said advances by this agreement."

Reference is made to the agreement, not because it is material to the disposition of the question under consideration, but for the sole purpose of considering some of the claims made by the objectors. Their principal claim is that the will is ambiguous. They vigorously argue that the court should receive extrinsic evidence in aid of its interpretation. They would have the court inquire into the circumstances surrounding the making of the agreement, the value of and the form in which the advances were made, the existence or non-existence of receipts for same, the amount of interest paid decedent, the provisions of a prior will, their lack of knowledge of the provisions of his will, the nature and value of the partnership assets, withdrawals made by the decedent from the firm after his retirement together with their effect on the interests of his sons, and many other matters which need not be detailed.

It may be conceded such proof might, when viewed in an aspect most favorable to the objectors, establish that decedent had made advances in an amount less than that stated in his will, or none at all. Even if the decedent was mistaken in his statement that he had made advances, or had made an error in the amount, parol evidence, nevertheless, could not be received to contradict the recitals made in his will. Where a testator disposes of his whole estate by will, the doctrine of advancements has no application, unless the will specifically refers to advancements and defines what previous gifts shall be so considered. (*Bowron* v. *Kent,* 190 N. Y. 422, 432; *Ritch* v. *Hawxhurst,* 114 id. 512; *Arnold* v. *Haronn,* 43 Hun, 278; *Matter of Bernhardi,* 151 Misc. 480.) Although the will considered in *Bowron* v. *Kent* (*supra*) contained no provision with reference to the deductions of advancements, and for that reason the court did not consider the authorities bearing on the subject, still the language there employed indirectly supports the rule established in other jurisdictions that where the will refers to advancements and designates the amount to be deducted, either in the will itself, or by reference to outside sources, parol evidence is not competent to show that the advancements were not made, or that the property advanced was not worth the amount at which it was valued by the testator. In that case HAIGHT, J. (at p. 429), said: " The testatrix by her will has attempted to dispose of all of her

estate. Ordinarily, a person in executing a will is presumed to make final disposition of the estate of which he may die seized or possessed, to the persons and in the shares therein designated and specified. It must be borne in mind that the testatrix executed her will thirteen years and some months after the contract with Mrs. Kent was made; that the will is clear and specific in terms, free from ambiguity, and in it no mention is made of the $25,000 set apart for Mrs. Kent by the contract, or any intention expressed that it should be deducted from the provisions made for her."

Here the will is clear and specific in terms and expressly mentions that a sum designated in numbers should be deducted from the provisions made for his sons. There is no room for controversy and proof about what the testator intended should be deducted. He has eliminated all controversy and excluded extrinsic proof, by expressing in his will the amount of the advancements to be deducted, instead of leaving it to be ascertained by reference to outside sources. The admonition addressed to his executors and trustees in the 14th paragraph is reiterated in the 15th and 17th paragraphs. He surely intended that his language should have some effect in the distribution of his estate, and the only conclusion which I can reach is that he intended the provisions made for the objectors should be diminished by reason of the advancements made to his sons.

Although no case in this State expressly deciding the question here presented has been called to my attention, nor does independent research disclose any, still reason and ample authority, here and abroad, justify the exclusion of the evidence offered. The objectors appear to overlook the fact that decedent was disposing of his own property, and was free to give it to or withhold it from them. They take his bounty upon the terms in which it is bestowed. The plain direction in the will to take into account the advancements recited constitutes a limitation upon the provisions made for them. The objectors cannot take under the will and at the same time dispute the truth of what the testator has said in the will regarding the deduction of the amounts advanced. Support for these views may be found in *Matter of Wood* (32 Ch. Div. 517) where the will stated that the testator had advanced to four of his sons respectively certain specified amounts on account of their respective shares and directed that the " respective sums hereinbefore recited to have been advanced " should be brought into hotchpot in making division of his estate. In deciding that the sons were bound by the statement in the will of the amounts of the advances made to them and were not entitled to adduce evidence that the advances which had been made to them were in fact of less amount, NORTH, J. (at p. 519), said: " These are voluntary gifts by the testator to his sons, and I

think they must take them as they find them. * * * If there is a mistake in the will as to the amounts of the advances, so much the worse for the persons to whom the gifts are made."

In *Buchanan* v. *Hunter* (166 Iowa, 663; 148 N. W. 881) the testator recited in his will that he had advanced certain property to one of his daughters " which I estimate to be of the aggregate value of forty-thousand dollars ($40,000) " and then gave $40,000 to another daughter to equalize her share. The daughter to whom the advance had been made sought to contradict the recital in the will by showing that the value of the property advanced did not exceed $15,000. In holding that the recital in the will was conclusive and that such evidence could not be received, the court, per WEAVER, J. (at p. 677), is reported as follows: " The property of the father was his own, to give or to withhold from his children as he saw fit. If he had given to either of them a farm or other item of property by way of advancement, it was his right to place upon it such valuation as to him seemed proper. He, better than any one else, knew what he had done for his children and the equities existing between them, and for the court to hold that when he is dead, and his estate is to be distributed according to his will, evidence may be admitted that the advancements made were less than is stated in that instrument, and that upon the strength of such showing a legacy to the younger daughter may be wiped out or materially reduced, would be to ignore all authority and well-established principles of the law of wills, and say that the court may amend the will or make it anew."

In *McAlister* v. *Butterfield* (31 Ind. 25) the testator directed that certain designated sums should be deducted from the shares of two of his daughters. In an action brought by them to reform the will it was alleged that one daughter had received less than the amount stated in the will and that another had received no advancement. It was there held that extrinsic evidence was not admissible to vary the terms of the will which were clear and positive. In *Matter of Tompkins* (132 Cal. 173; 64 Pac. 268) the testatrix bequeathed her residuary estate in equal shares to her children, but provided that amounts of money formerly loaned to two of them should be deducted as advancements. Prior to the making of the will testatrix executed an instrument releasing her children from the loans in question. In holding that the release was not admissible to show the intention of the testatrix and could not affect her right to make such disposition of her property as she saw fit, the court said: " The testatrix must have intended that this clause in her will should have some effect in the distribution of her estate, and the only purpose deducible from its language is, that she intended thereby that the shares of the appellants should be diminished by reason of these loans."

In *Matter of Bresler* (155 Mich. 567; 119 N. W. 1104) it was held that since one may do what he pleases with his own, there was no legal or moral objection to testator deducting from the legacy to his daughter sums which he had advanced to her husband. In *Younce* v. *Flory* (77 Ohio St. 71; 83 N. E. 305) the testator gave his property to his children equally, subject to the charges against them in his book of advancements. It was there held that parol evidence was not competent to show that an advancement charged by him in such book was not made. Further rulings of like tenor may be found in *Painter* v. *Painter* (18 Ohio, 247); *Alward* v. *Woodard* (315 Ill. 150; 146 N. E. 154); *Bacon* v. *Gassett* (95 Mass. 334); *Hall* v. *Davis* (20 id. 450); *Matter of Cummings* (120 Iowa, 421; 94 N. W. 1117); *Duff* v. *Duff's Exrs.* (146 Ky. 201; 142 S. W. 242); *Callender* v. *Woodward* ([Tenn.] 52 S. W. 756). My conclusion is that extrinsic evidence cannot here be received to vary the language of the will which I find to be unambiguous and conclusive with respect to the amount of deductions to be made, and my direction to the petitioners is that the trusts for Frederick Willis and Mary I. Willis are each to be reduced by $75,000. The objections are overruled. Submit decree on notice construing the will, settling the account and directing distribution accordingly.