In the Matter of the Accounting of GUARANTY TRUST COMPANY, as Executor of FREDERICK L. LUTZ, Deceased.

Surrogate's Court, New York County, August 7, 1951.

*Herbert C. Pentz* and *Arthur E. Sullivan* for executor, petitioner.

*Paul W. Williams* and *Ralph O. Winger* for Gary T. de Lisser, respondent.

*Robert L. Graham, Jr.*, for Warren F. Lutz, respondent.

FRANKENTHALER, S. Objections have been raised to the action of the executor in crediting the sum of $9,802.73 against the legacy given respondent. A further objection has been raised to the crediting of $960.75, representing the cost of certain jewelry delivered to objectant after testator's death. To sustain these deductions, the accountant contends that the principal sum represents advances made by decedent to the objectant in anticipation of her legacy and that the postmortem delivery of the jewelry was improper since no valid gift thereof had been effected during testator's lifetime.

The original account credited the sum of $13,977.55 against objectant's legacy but during the course of the proceedings certain payments antedating the execution of the will (*Bowron* v. *Kent*, 190 N. Y. 422) as well as payments not shown to have been made for the benefit of objectant were withdrawn. Certain other credits, represented by checks numbers 18481, 18506 and 18590, are disallowed as they were not shown to have been gifts to the objectant.

At the time of his death in 1948, testator was sixty-seven years old and his closest living relative was a married son. He had first met the objectant and her husband at his son's wedding in 1942. From that time, a very warm friendship sprang up between testator and objectant; they had frequent social contacts and testator made it a point to spend his leisure time with the objectant and her husband. Testator frequently referred to objectant as his niece, being addressed as "Uncle Fred", and their relationship has been characterized by objectant as that of guardian-ward. In 1946, decedent sought to adopt the objectant but as objectant's parents were then living, the plan was aban-

doned. On October 1, 1946, testator executed his last will and testament in which the objectant, referred to as " my friend ", was given certain household effects and $50,000 in cash. The residue, after two minor bequests, was given to decedent's son who was also appointed executor without bond. On December 4, 1947, testator executed a codicil in which he nominated the Guardian Trust Company as executor in place of his son and added an *in terrorem* clause. In all other respects, the codicil ratified, confirmed and republished his will.

The first payment recorded by the accountant was made on June 6, 1946, and from that date until his death, decedent made many gifts to the objectant. The amounts of the gifts varied, ranging from as little as $2.50 to as high as $2,000. The purposes for which these gifts were given can be summarized in five categories: (a) payments for the purchase and maintenance of an automobile, (b) payments for several trips taken by objectant, on two of which the decedent accompanied her; (c) payments for jewelry, clothing and household furnishings, together with the payment of insurance on certain of these articles; (d) payments related to the maintenance of objectant's art studio, and (e) miscellaneous payments and unexplained checks drawn to or for the order of objectant. The accountant does not and upon the proof cannot claim that testator expressed an intention that these gifts were to be treated as advancements. Instead, its position is that there is a presumed intent arising from the filial relationship between the parties and the nature of the gifts.

The rule in this State has been stated as follows: " Whenever a parent gives a legacy to a child, without stating any particular object for which it is given, such legacy is regarded as a portion. And if the testator afterwards during his own lifetime, makes a settlement upon the child by way of a portion, or pays to him a sum of money by way of a portion, or makes an advancement to him, or gives him a sum of money as an advancement, such payment, portion, or advancement amounts to a satisfaction— or, as is often said, an ademption of the legacy, either *pro tanto* or in full * * *. This rule is based upon a presumption against double portions; that is, a presumption adopted by courts of equity that a parent, owing a common duty to all his children, could not have intended to distribute his estate unequally among them and to favor one at the expense of the others." (*Matter of Weiss,* 39 Misc. 71, 72. See, also, 4 Page on Wills, § 1540, and 2 Davids on New York Law of Wills, § 1127.) This presumption can, of course, be rebutted (*Matter of Scott,* [1903] 1 Ch. 1; *Matter of Lacon,* [1891] 2 Ch. 482).

Hence, the elements necessary to raise the presumption are: (1) a bequest in the nature of a portion; (2) the parent-child relationship; and (3) an advancement in the nature of a portion which would cause inequality. The term "portion" has been defined as "something which is given by the parent to establish the child in life or to make what is called provision for him" (2 Jarman on Wills 1123 [7th ed., Sanger, 1930]), and it may reasonably be assumed that a legacy of $50,000 to a "child" constitutes a "portion" within the rule (*Matter of Weiss, supra*).

The second requisite — the parent-child relationship — is fundamental (see *Matter of Cramer*, 43 Misc. 494, 496). However, a blood relationship is not necessary; it is sufficient if the testator stands *in loco parentis* to the legatee. "A person *in loco parentis* has been defined as one ' who *means* to put himself in the situation of the lawful father of the child, with reference to the father's office and duty of making a provision for the child.' (2 Williams Executors [7th ed.], p. 652.) ° ° ° While most of the cases recognizing the relationship are those where the parties were directly or collaterally related, the assumed office may exist between those not related. ° ° ° The acts and declarations of the testator should establish that he considered himself in the place of the child's father, and that he intended to discharge the obligations of a parent. The primary obligation of a parent is to care for, support, educate and provide for his child. There must be proof of the assumption and performance of these obligations." (*Matter of Bernhardi*, 151 Misc. 480, 482. See, also, *Matter of Citrin* v. *Belcastro*, 196 Misc. 272; *Powys* v. *Mansfield*, 3 Myl. & Craig 359, 40 Eng. Rep. 964, and *Langdon* v. *Astor's Executors*, 16 N. Y. 9, 34.) Moreover, the relationship must be shown to have existed at the time the will was executed (*Watson* v. *Watson*, 33 Beav. 574, 55 Eng. Rep. 491).

The accountant claims that the filial relationship between the parties, characterized by objectant as that of guardian-ward, the oft-expressed love and affection of the testator for the objectant and the support rendered objectant indicate that testator was *in loco parentis* to objectant. The latter, on the other hand, maintains that the relationship did not exist since she was at all times supported by her husband and not dependent upon the testator.

The court has found no case in this State involving the problem here presented where the relationship claimed was found

between persons not related by blood (compare *Matter of Bernhardi*, 151 Misc. 480, *supra*, daughter-in-law; relationship not proved, with *Matter of Percival*, 79 Misc. 567, 576, mod. on other grounds, 162 App. Div. 923, grandson; contra. But see *Williams v. Hutchinson*, 3 N. Y. 312, action by stepson for work and labor; stepfather held *in loco parentis*, and *Matter of Korte*, 78 Misc. 276, adoption proceeding; religious institution held *in loco parentis* to deserted and adopted children). Much the same result seems to have been reached in other jurisdictions (see 4 Page on Wills, § 1541). English courts have found the relationship to have existed between grandfather and granddaughter (*Watson v. Watson*, 33 Beav. 574, 55 Eng. Rep. 491, *supra*), uncle and niece (*Powys v. Mansfield*, 3 Myl. & Craig 359, 40 Eng. Rep. 964, *supra*) and cousins (*Booker v. Allen*, 2 Russ. & Myl. 270, 39 Eng. Rep. 397). In all of these cases there was evidence that the " parent " had supported the child during her early years, either directly or indirectly, and had dealt with her in all matters as his daughter. In no case, was the testator found *in loco parentis* when the relationship had commenced during the adult life of the child. Thus, in *Matter of Bernhardi* (151 Misc. 480, *supra*), the legatee was the daughter-in-law of testatrix and had lived with her for sixteen years. There was proof of a strong bond of affection between them. Nevertheless, the court held that testatrix was not *in loco parentis* to the legatee since " No proof has been furnished that the legatee did not support and maintain herself, or, if unable to do so, that others more closely related to and upon whom the obligation of supporting her might have been imposed, had not done so." (P. 483.) Furthermore, there was no proof outside of expressions in the will that testatrix treated or regarded her as her child.

This case is particularly applicable here. While there is evidence of decedent's intention to treat the objectant as his child, it is unquestioned that objectant was at all times supported and cared for by her husband. The gratuities rendered her were not in the discharge of parental obligations of care and support, as the gifts were for the most part luxuries, but rather resulted from decedent's affection for objectant.

It is thus evident that the requirements set forth in the *Bernhardi* case have not been satisfied and the court accordingly holds that testator was not *in loco parentis* to the objectant.

However, assuming that the alleged relationship is shown to have existed, the court is further of the opinion that none of the gifts constitute advancements within the rule as hereinbefore

discussed. In the first place, there is no evidence that testator intended that the gifts be treated as advancements (*Hine* v. *Hine,* 39 Barb. 507; 4 Page on Wills, § 1536). Therefore, his intent must be presumed from the nature of the relationship, the nature of the gifts and the theory that equality among children was intended.

There have been few decisions in this State dealing with the problem of advancements, and most of them are inapplicable to the facts in this case. This is not a case where testator has included a " hotchpot " provision in his will or codicil (*Langdon* v. *Astor's Executors,* 16 N. Y. 9, *supra; Lawrence* v. *Lindsay,* 68 N. Y. 108; *Hine* v. *Hine,* 39 Barb. 507, *supra*) nor one where the legatee receipted for the gift as an advancement (*Matter of Turfler,* 1 Misc. 58; see *Brown* v. *Blackman,* 71 Hun 356, 359–360, affd. 151 N. Y. 670) nor one where the legacy was for a certain purpose which was discharged during testator's lifetime (*Matter of Weiss,* 39 Misc. 71, *supra; Hine* v. *Hine, supra*) nor one where the legacy and the gifts were *ejusdem generis* (*Langdon* v. *Astor's Executors, supra; Powys* v. *Mansfield,* 3 Myl. & Craig 359, 40 Eng. Rep. 964, *supra;* 4 Page on Wills, § 1545).

In the cases not falling within the afore-mentioned categories, the courts have treated gifts as advancements when they were either the full amount of the legacy (see *Brown* v. *Blackman,* 71 Hun 356, 359–360, affd 151 N. Y. 670, *supra*) or were for such purposes as establishing a child in business (*Matter of Percival,* 79 Misc. 567, 576, mod. on other grounds 162 App. Div. 923, *supra; Page* v. *Elwell,* 81 Colo. 73; cf. *McRae* v. *McRae,* 3 Bradf. 199) and as a settlement upon marriage (*Watson* v. *Watson,* 33 Beav. 574, 55 Eng. Rep. 491, *supra; Powys* v. *Mansfield,* 3 Myl. & Craig 359, 40 Eng. Rep. 964, *supra*), both of which are deemed " portions " within the meaning of the rule. Where the gifts were small in sum the courts have almost without exception held that they could not be deemed advancements (see *Sanford* v. *Sanford,* 61 Barb. 293, 299–300, intestacy; *Bruce* v. *Griscom,* 9 Hun 280, 281, affd. 70 N. Y. 612, intestacy; *Watson* v. *Watson,* 33 Beav. 574, 575, 55 Eng. Rep. 491, 492, *supra; State ex rel. Brown* v. *Crossley,* 69 Ind. 203 [1879], and 4 Page on Wills, § 1547. But cf. *Paine* v. *Parsons,* 14 Pick. 318 [Mass., 1833]).

While the total of the claimed advancements exceed 18% of the legacy the largest single gift is but 4% thereof. Moreover, none of the gifts has been shown to be for the purposes hereinbefore stated. Accountant's general position is that testator wanted the objectant to enjoy the benefit of the legacy during

his lifetime; that the legacy was intended to afford her luxuries and that he wished the pleasure of watching her enjoyment of them. No evidence has been adduced in support of this argument and the inference that testator wished to confer additional gratuities upon the objectant is as consistent with the facts. These occasional and varying gifts can in no sense be deemed " portions " within the meaning of the rule since they were not given with a view to " establishing [objectant] in life." (*Matter of Lacon* [1891], 2 Ch. 482, 498, *supra*). Hence, it is evident that the gifts in controversy were not intended to be advancements against objectant's legacy nor are they such as a matter of law.

This conclusion is further reinforced by reference to the codicil executed December 4, 1947. It is well settled that the execution of a codicil, subsequent to the making of advancements, which merely republishes the will does not revive the adeemed legacy (*Langdon* v. *Astor's Executors,* 16 N. Y. 9, *supra; Magee* v. *Magee,* 67 Barb. 487; *Powys* v. *Mansfield,* 3 Myl. & Craig 359, 40 Eng. Rep. 964, *supra; Booker* v. *Allen,* 2 Russ. & Myl. 270, 39 Eng. Rep. 397, *supra; Paine* v. *Parsons,* 14 Pick. 318 [Mass., 1833], *supra; Hayes* v. *Welling,* 38 R. I. 553). However, it has also been held that if the codicil treats the legacy as extant, there has been no ademption (*De Groff* v. *Terpenning,* 14 Hun 301), and that the codicil may be viewed as evidence of testator's intention with respect to the gift (*Matter of Scott* [1903], 1 Ch. 1, *supra*).

Testator here changed his will in two respects — he replaced his son as executor by a trust company and he incorporated an *in terrorem* clause. Inasmuch as the latter could not be directed against any of the nonresiduary legatees, none of them having status to contest or challenge, it would seem that the clause was directed against testator's son. Moreover, it could be only for the protection of objectant since the two other minor legacies were unassailable. Hence, the codicil indicates the testator's intent to assure objectant's legacy of the greatest possible protection. It also indicates that there was no intent to treat objectant and his son equally, but rather to accord objectant a preferred position.

In these circumstances, it can hardly be said that testator intended his gifts to adeem objectant's legacy, and the credits are therefore disallowed. The objectant is entitled to interest on her legacy at the average rate of income earned by the estate until liquidation and thereafter at the rate of 2% per annum

(cf. *Matter of Heller*, N. Y. L. J., Jan. 22, 1951, p. 260, col. 4, and *Matter of Clarke*, 166 Misc. 807, 813).

The second issue in this case is whether decedent made a gift of the jewelry credited to objectant's legacy, and, if so, whether it is an advancement. The jewelry, a powder box and matching lipstick case, was ordered by decedent in August of 1948. As the articles were not in stock, they were to be manufactured and then delivered to objectant. They were received by the jeweler on September 27, 1948, and delivered to objectant the following day. Decedent died September 20, 1948. In *Vincent* v. *Rix* (248 N. Y. 76, 82–83) the Court of Appeals stated the rule here applicable. "Delivery is essential to constitute a valid gift. The delivery must be such as to vest the donee with the control and dominion over the property and to absolutely divest the donor of his dominion and control, and the delivery must be made with the intent to vest the title of the property in the donee. * * * While delivery may be made to a third party for and in behalf of the donee, yet handing the property to an agent of the donor to be delivered to the donee is not sufficient."

From the facts in this case, it is obvious that the requisite delivery was not effected. Decedent never made a physical transfer of the jewelry during his life, and because of the nature of the transaction he could not. Moreover, there was not such a "constructive" delivery as is allowed when physical delivery is impossible (*Heise* v. *Wells*, 211 N. Y. 1; *Matter of Cohn*, 187 App. Div. 392). Hence, there was no valid *inter vivos* gift of the jewelry and the credit of the agreed value thereof will be allowed.

Submit decree on notice settling the account accordingly.